<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RICKY MILLER, | : | |
| | : | Civil Action No. 08-3335(DMC) |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| NEW JERSEY DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| | : | |
| Defendants. | : | |

APPEARANCES:

> RICKY MILLER, Plaintiff <u>pro se</u>
> # 549995
> Northern State Prison
> 168 Frontage Road, P.O. Box 2300
> Newark, New Jersey 07114

**CAVANAUGH**, District Judge

Plaintiff Ricky Miller ("Miller"), currently a state inmate confined at the Northern State Prison in Newark, New Jersey, brings this action <u>in forma pauperis</u>, alleging violations of his constitutional rights under 42 U.S.C. § 1983. Based on his affidavits of indigence and institutional account statements, the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.[1]

---

[1] This Court notes that Miller filed two additional applications for indigent status, on September 30, 2008 (Docket Entry No. 2), and on February 23, 2009 (Docket Entry No. 6).

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I.   BACKGROUND

Miller brings this action, pursuant to 42 U.S.C. § 1983, against the following defendants: the New Jersey Department of Corrections ("NJDOC"); George Hayman, NJDOC Commissioner; Lydell Sherrer, Administrator of the Northern State Prison ("NSP"); Nina Muse, NJDOC Interstate Services Office; Jennifer Hendricks, Administrator of Interstate Agreement on Detainers; Lieutenant Alaimo G. Smith, a correctional officer at NSP; Catherine Lewis, an NSP Classification Officer; District Attorney's Office for Pike County, PA; Douglas Jacobs, Pennsylvania District Attorney; Ray Tonkins, Ass't. District Attorney; Bruce Desarro, Ass't. District Attorney; Michael Jones, Detective DA Office; Peggy Sue Goble, Secretary DA Office; and Pennsylvania State Police Troopers Chriss Grube, Frank Orlando, Edward McCarthy and John Doe officers.  (Complaint, Caption and ¶¶ 2-17).  The following factual allegations are taken from the Complaint, and are

accepted for purposes of this screening only.  The Court has made
no findings as to the veracity of plaintiff's allegations.

Miller alleges that, on February 17, 2006, Trooper Orlando
transmitted a detainer warrant for plaintiff's arrest while
plaintiff was confined at the Warren County Correctional Center
in Belvidere, New Jersey.  Miller was later placed in the custody
of the New Jersey Department of Corrections ("NJDOC") in May
2006.  (Compl., ¶¶ 23-24).

On May 12, 2006, Miller asked the Northern State Prison
("NSP") officials, where he was confined at that time, for final
disposition of all detainers pursuant to Article III of the
Interstate Agreement on Detainers ("IAD").  Miller alleges that
defendants Lewis and Sherrer at NSP completed and signed the IAD
forms on May 12, 2006, but failed to mail or transmit the forms
until August 8, 2006.  Included with these IAD forms was a letter
addressed to defendant Tonkins instructing him of the appropriate
action to take.  (Compl., ¶¶ 25-27).

Miller alleges that defendant Peggy Sue Goble, a secretary
in the Pike County District Attorney's Office, received the IAD
forms transmitted on August 8, 2006, and discarded one set that
should have been filed with the Pike County Court of Common Pleas
in Milford, Pennsylvania, as listed on Detainer Form II.  On
August 10, 2006, defendant Jacobs, a district attorney with the
Pike County District Attorney's Office, filed an IAD Form V, a

3

request for temporary custody of plaintiff, circumventing Miller's request pursuant to IAD Article III. Miller contends that defendants failed to follow the procedures of the IAD as set forth in N.J.A.C. 10A:10-4 and N.J.S.A. 2A:159A-1 et seq. (Compl., ¶¶ 28-33).

On August 15, 2006, Jacobs mailed the IAD Form V to defendants Hayman and Muse at the NJDOC. On November 8, 2006, defendant PA State Trooper Orlando went to the Pike County District Attorney's Office to sign Form VI, the Agents Authority to Act for a Receiving State, but this form was never provided to plaintiff in discovery as requested. On November 30, 2006, Trooper Orlando was instructed to go to Northern State Prison to take Miller into custody pursuant to a warrant of arrest issued by a magistrate in Pike County, Pennsylvania. Plaintiff seems to dispute the validity of the warrant. In any event, on December 4, 2006, Troopers Orlando and McCarthy went to Northern State Prison to take Miller into custody. (Compl., ¶¶ 34-37).

On December 4, 2006, Miller was ordered to go to H Unit where he was met by two men without uniform who informed Miller that they were taking him to Pennsylvania. When Miller asked to see the extradition papers, Trooper Orlando told him that plaintiff was going with them whether he liked it or not, and a Lieutenant Alamo told plaintiff he was not entitled to see the paperwork, which was with classification. Miller was then taken

4

to a holding cell where he was strip searched by defendant Smith
and other unknown correctional officers at Northern State Prison.
Miller was told to turn around and face the wall with his hands
on the wall, to which he complied.  Miller again asked to see the
extradition papers, and was grabbed by his right wrist by Trooper
Orlando.  Orlando wrenched plaintiff's wrist behind his back,
causing plaintiff to lose his balance and fall onto a bench.
Defendant McCarthy then proceeded to punch Miller in the face
repeatedly, causing facial lacerations, broken teeth, pain,
contusions, and loss of consciousness.  None of the officers
present did anything to stop the beating.  (Compl., ¶¶ 38-41).

Miller was taken to the infirmary at Northern State Prison
where officers taunted him about the beating and having to ride
all the way back to Pennsylvania with the state troopers.
Several photos were taken of plaintiff's injuries and he received
a cursory examination.  Miller was then placed in the patrol car
for transport to Pennsylvania.  He complains that he feared for
his life on the trip, but does not allege that any further
assault took place.  Miller was taken to the Pike County Jail,
where an intake officer also took photos of plaintiff's injuries.
Medical reports prepared on December 5, 2006 documented
plaintiff's injuries to include two one-inch lacerations to his
forehead and right eye area, with small abrasions to his right
cheek.  Miller complained of dizziness, blurred vision and

5

headaches, and was again treated for his injuries on December 19, 2006. (Compl., ¶¶ 42-52).

On March 12, 2007, a habeas proceeding was conducted in the Court of Common Pleas in Pike County, Pennsylvania. Miller had requested that the NJDOC, in particular, defendant Hayman, provide to plaintiff all records relating to his extradition. A subpoena also was served on defendant Jacobs of the Pike County District Attorney's Office. Miller alleges that he did not receive any documents requested at his habeas proceeding, and did not receive a copy of the IAD Form VI until after he was returned to New Jersey in September 2007. (Compl., ¶¶ 53-56).

Miller further complains that the IAD Form VI reveals that he was to be taken into custody on December 4, 2006 for a trial to begin on December 12, 2006, giving him no time to prepare a defense. He also complains that he was not appointed counsel for extradition purposes, as he requested on his IAD Form II. He further alleges that defendants Jacobs, Tonkins, DeSarro and Jones, failed to provide plaintiff with requested discovery. (Compl., ¶¶ 57-61).

On June 15, 2007, Miller requested grievance forms from defendants Hayman and Sherrer, which were never provided to plaintiff. (Compl., ¶ 62).

Miller further complains that defendant DeSarro entered a "Nolle Prosequi" in plaintiff's criminal case, on August 10, 2007, which allegedly gives the district attorney an indefinite

period of time to refile charges against plaintiff in violation of his right to a speedy trial and the provisions under the IAD. (Compl., ¶ 63).

Finally, Miller alleges that more than 180 days had elapsed between the time the IAD forms were signed and plaintiff was removed from Northern State Prison, without a pre-transfer hearing. Miller claims that defendants Sherrer and Lewis "breached" a contract with plaintiff when they failed to mail the IAD forms he requested in a timely and appropriate manner. (Compl., ¶¶ 70-73).

Miller alleges the following claims against the named defendants: (1) unlawful arrest and seizure;[2] (2) the use of excessive force in violation of the Eighth Amendment;[3] (3) violation of procedural due process with regard to IAD procedures; and (4) failure to protect in violation of the Eighth Amendment. He also generally alleges claims of negligent or reckless supervision, implementation, training and control that caused the violation of plaintiff's constitutional rights (Counts

---

[2] Miller alleges an unlawful arrest and seizure claim in three counts (Counts One, Two and Three). The second and third counts allege that the false arrest was done either negligently or with deliberate indifference. He also asserts a claim of physical and emotional suffering as a result of the alleged unlawful arrest and seizure (Count Eight).

[3] Plaintiff asserts two counts of excessive force (Counts Four and Five) that are fairly indistinguishable and will be addressed together. He also asserts a claim of physical and emotional suffering as a result of defendants' use of excessive force in Count Nine of the Complaint.

Ten, Eleven, Twelve and Thirteen).[4]  In Counts Fourteen and Fifteen of the Complaint, Miller further asserts state law claims alleging intentional infliction of emotional distress, and violations of New Jersey state constitutional law.  Finally, in Count Seventeen of the Complaint, Miller alleges a claim of conspiracy in violation of 42 U.S.C. § 1985.  He alleges a general federal constitutional tort claim in Count Sixteen, asserting violations of his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights.

Miller seeks an unspecified amount in compensatory and punitive damages.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  Here, plaintiff is a prisoner who is proceeding in forma pauperis, and he is asserting claims against

---

[4]  In Count Thirteen, Miller asserts a violation under 42 U.S.C. § 1986.

government prison officials with respect to incidents occurring while he was confined.  Consequently, this action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

In short, a pro se prisoner plaintiff simply need comply with the pleading requirements of Rule 8(a)(2)(complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief").  See Erickson, 127 S.Ct. at 2200.  Thus, a complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair

notice of what the ... claim is and the grounds upon which it rests." Erickson, 127 S.Ct. at 2200 (citations omitted).

>While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculation level. ...

Bell v. Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S.Ct. 1955, 1964-65 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Accordingly, a pro se prisoner plaintiff may allege only enough factual matter (taken as true) to suggest the required elements of the claim(s) asserted. Twombly, supra; Phillips v. Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d

371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, plaintiff names the New Jersey Department of Corrections ("NJDOC") as a defendant in this matter.   However, any claims asserted against this state entity is subject to dismissal under the Eleventh Amendment and because the NJDOC is not a "person" for purposes of § 1983 liability. See Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989)(the New Jersey Department of Corrections is not a person under § 1983).; Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa. 1976).  Moreover, neither states, nor governmental entities, such as the New Jersey Department of Corrections, that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow, supra.  Therefore, the Complaint should be dismissed with prejudice in its entirety with respect to defendant NJDOC, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii) and 1915A(b)(1) and (2).

IV.  ANALYSIS

A.  Prosecutorial Immunity

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983.  Imbler v. Pachtman, 424 U.S. 409, 410 (1976).  Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity.  Burns v. Reed, 500 U.S. 478, 492 (1991). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

A prosecutor is not entitled to absolute immunity, however, for actions undertaken in some other function.  See Kalina v. Fletcher, 522 U.S. 118 (1997) (prosecutor is protected only by qualified immunity for attesting to the truth of facts contained in certification in support of arrest warrant, as in her provision of such testimony she functioned as a complaining witness rather than a prosecutorial advocate for the state); Burns, 500 U.S. at 492-96 (the provision of legal advice to police during pretrial investigation is protected only by qualified immunity); Buckley, 409 U.S. at 276-78 (prosecutor is not acting as an advocate, and is not entitled to absolute

13

immunity, when holding a press conference or fabricating evidence). See also Yarris v. County of Delaware, 465 F.3d 129 (3d Cir. 2006)(where the Court of Appeals for the Third Circuit presents a detailed and nuanced analysis of when a prosecuting attorney is, and is not, entitled to absolute immunity for allegedly wrongful acts in connection with a prosecution, holding, for example, that a prosecutor is not entitled to absolute immunity for deliberately destroying highly exculpatory evidence, but is entitled to immunity for making the decision to deliberately withhold exculpatory evidence before and during trial, but not after the conclusion of adversarial proceedings).

Here, Miller alleges a § 1983 claim against the Pike County Prosecutor defendants, namely, the Pike County District Attorney's Office, District Attorney Douglas Jacobs, Assistant D.A. Ray Tonkins, and Assistant D.A. Bruce Desarro (the "prosecutor defendants"), with respect to their actions in pursuing a request for temporary custody under Article IV of the IAD. Specifically, the prosecuting defendants acted to bring Miller to Pike County for trial on an outstanding criminal indictment. This Court finds that the prosecutor defendants' role in the IAD procedures at issue clearly falls within the scope of prosecutorial duties in initiating and pursuing a criminal prosecution against plaintiff. Therefore, any purported claim of prosecutorial misconduct, or other allegations of

wrongdoing, against the prosecutor defendants, are subject to dismissal for failure to state a claim.

B.   Excessive Force Claim

Miller alleges that defendants, Orlando and McCarthy, used excessive force against him in violation of the Eighth Amendment because he is a convicted prisoner. See Graham v. Connor, 490 U.S. 386, 392-394 (1989)(cases involving the use of force against convicted individuals are examined under the Eighth Amendment's proscription against cruel and unusual punishment).

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments:  they cannot be 'cruel and unusual.'" Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. Id. at 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently

culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). The objective component is contextual and responsive to "'contemporary standards of decency.'" <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" <u>See</u> <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson</u>, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); <u>Rhodes</u>, 452 U.S. at 345. What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation. <u>Hudson</u>, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" <u>Quoted in</u> <u>Hudson</u>, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." <u>Id.</u> at 9. In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than <u>de minimis</u> force is used. <u>Id.</u> at 9-10 (finding that blows which caused bruises, swelling, loosened

teeth, and a cracked dental plate were not <u>de minimis</u> for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

<u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000) (quoting <u>Whitley v. Albers</u>, 475 U.S. at 321). Thus, not all use of force is "excessive" and will give rise to the level of a constitutional violation. <u>See</u> <u>Hudson</u>, 503 U.S. at 9 (it is clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action"). Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." <u>Id</u>. at 9-10.

Here, Miller alleges that defendants maliciously assaulted him without provocation by twisting his wrist behind his back, causing plaintiff to fall, and then punching him in the face repeatedly to the point Miller lost consciousness. Miller states that he sustained serious injuries, including facial laceration, broken teeth, contusions, headaches, dizziness, and loss of consciousness, which required medical treatment. These

allegations suggest that plaintiff's injuries were not <u>de minimis</u>.[5]  Therefore, based on the allegations in the Complaint, if true, it would appear that Miller has asserted facts sufficient to suggest that defendants, Orlando and McCarthy, exhibited malicious and sadistic conduct intended to cause plaintiff pain.  Such conduct, if true, is "repugnant to the conscience of mankind" absent extraordinary circumstances necessary to justify that kind of force.  <u>Hudson</u>, 503 U.S. at 10. Accordingly, this Court will allow this claim to proceed past the screening stage, as against these two defendants.

Furthermore, to the extent that Miller may also be asserting a common law tort claim of assault and battery against these defendants, the Court finds that supplemental jurisdiction may be exercised under 28 U.S.C. § 1367(a) because such claim is plainly related to plaintiff's Eighth Amendment excessive force claim, over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

C.  <u>Failure to Protect Claim</u>

Miller also appears to be asserting a failure to protect claim in violation of his Eighth Amendment rights, with respect

---

[5]  "[T]he Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." <u>Smith v. Mensinger</u>, 293 F.3d 641, 648 (3d Cir. 2002).  Thus, the pivotal inquiry in reviewing an excessive force claim is whether the force was applied maliciously and sadistically to cause harm.  <u>Id.</u> at 649; <u>Brooks</u>, 204 F.3d at 106.  Otherwise, an inmate "could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted" in injuries that were <u>de minimis</u>.  <u>Id.</u>

to the excessive force that was used against Miller during his transfer from Northern State Prison.  This claims is directed against the officers present during the assault, defendants Lt. Alaimo Smith, Pennsylvania State Trooper Grube and other unnamed troopers present, and John Doe correctional officers at Northern State Prison.  Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety.  Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).  "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'"  Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

As discussed above, to successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim.  The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety.  See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to

inmate safety, Id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Farmer, 511 U.S. at 834.

Here, Miller alleges that these defendants witnessed the beating by Orlando and McCarthy, and stood by and did nothing to stop the assault. This allegation may be sufficient to withstand dismissal at this early screening stage.

Miller also generally alleges that defendants Hayman and Sherrer failed to protect and properly train and supervise these defendant officers, thus causing the injuries plaintiff sustained on December 4, 2006, during the transfer. Miller does not allege any direct knowledge or involvement of these two supervisory defendants with respect to the assault of plaintiff by the Pennsylvania State Troopers on December 4, 2006. Thus, it would appear that this claim against Hayman and Sherrer is based on a claim of supervisor liability.

Generally, local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

There are no allegations in the Complaint that show defendants Hayman and Sherrer had any personal involvement or knowledge of the assault of plaintiff. Thus, any claim that these defendants failed to protect plaintiff or properly supervise the Pennsylvania State Troopers with respect to the assault that took place on December 4, 2006, will be dismissed without prejudice at this time, for failure to state a claim.

D. False Disciplinary Charges

Next, Miller alleges that defendants filed false disciplinary charges against him as a result of the December 4, 2006 incident.  The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.  See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonnell, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation).  See also Creter v. Arvonio, No. 92-4493, 1993 WL 306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest ... where procedural due process protections were provided").

In this case, Miller does not allege that he was denied an institutional disciplinary hearing or an opportunity to present evidence to refute the charges.  In fact, he states that he prevailed against the institutional charges, and they were dismissed.  Accordingly, this claim does not rise to the level of

a constitutional deprivation, and it will be dismissed for failure to state a cognizable claim under § 1983.

E.   IAD Claims

Aside from his Eighth Amendment claims of excessive force and failure to protect, Miller principally complains about the defendants' failure to follow the procedures set forth in the Interstate Agreement on Detainers ("IAD"), that resulted in plaintiff being removed from New Jersey to Pike County, Pennsylvania, without a pre-transfer hearing, and without final disposition of the charges against him as plaintiff had sought.

The pertinent facts, as alleged by plaintiff, are as follows.  On or about February 13, 2006, an arrest warrant was issued for Miller by a Magistrate of the Commonwealth of Pennsylvania, in Pike County.  This warrant was transmitted to the State of New Jersey where plaintiff was then confined, to serve as a detainer against him.  Based on notification of this detainer, Miller completed IAD forms pursuant to Article III, on May 12, 2006.  On that same date, May 12, 2006, these IAD forms (IAD Forms I through IV) were then mailed by defendant, Catherine Lewis, a Classification Officer at Northern State Prison, where plaintiff was confined, to Ray Tonkins, Assistant D.A. at the Pike County District Attorney's Office in Milford, Pennsylvania, where the warrant and detainer had issued.  (Compl., Exhibit A).

From May 12, 2006 until August 8, 2006, no activity occurred with respect to Miller's IAD Article III request.  Then, on August 8, 2006, it appears that these IAD forms were again

23

transmitted by defendant Lewis to the Pike County District Attorney's Office, this time by facsimile transmission.  The fax transmittal form was addressed to Peggy Goble and Assistant D.A. Tonkins.[6]  Two days later, on August 10, 2006, the Pike County District Attorney's Office filed an IAD "Request for Temporary Custody" Form under Article IV, thereby circumventing Miller's IAD Article III request.

The IAD is a congressionally-sanctioned interstate compact among 48 states (including New Jersey and Pennsylvania), the District of Columbia, Puerto Rico, the Virgin Islands, and the United States.  See 18 U.S.C. App. II § 2; N.J.S.A. 2A:159A-1 to -15; 42 Pa.C.S.A. §§ 9101 to 9108; New York v. Hill, 528 U.S. 110 (2000); Cuyler v. Adams, 449 U.S. 433, 442 (1981).  The IAD aims to "encourage the expeditious and orderly disposition of [outstanding] charges and determination of proper status of any and all detainer based on untried indictments, informations or complaints" by providing cooperative procedures among the party jurisdictions.  IAD, Art. I.

Among those procedures, Article III of the IAD permits an inmate confined in one jurisdiction to initiate proceedings to

---

[6]  Miller alleges that a secretary at the Pike County District Attorney's Office, Peggy Sue Goble, had received the fax transmittal and discarded one set of documents.  It is not clear from the Complaint how this clerical error purports to violate a constitutionally-protected right.  Documents submitted by plaintiff show that the discarded documents were a duplicate copy of hard copy documents already on hand at the Pike County District Attorney's Office.  Accordingly, the Complaint will be dismissed in its entirety as against defendant Goble.

bring him to trial on charges pending in another jurisdiction.

Specifically, Article III provides in pertinent part:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: *Provided*, That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.  The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

(c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

In addition,
(a) In response to a request made under article III ... hereof, the appropriate authority in a sending State shall offer to deliver temporary custody of such prisoner to the appropriate authority in the State where such indictment, information, or complaint is

> pending against such person in order that speedy and
> efficient prosecution may be had.  If the request for
> final disposition is made by the prisoner, the offer of
> temporary custody shall accompany the written notice
> provided for in article III of this agreement. ...

IAD, Art. V(a).  Failure to abide by the time limit set forth in

Article III requires dismissal of the indictment.  IAD, Art.

V(c).

Standard forms have been adopted by all signatories to the

IAD.  See Casper v. Ryan, 822 F.2d 1283, 1285 n.2 (3d Cir. 1987),

cert. denied, 484 U.S. 1012 (1988); The Council of State

Governments, The Handbook on Interstate Crime Control 125-33

(1978).  The forms for use in an Article III request for final

disposition are:

> Form 1: "Notice of Untried Indictment, Information or
> Complaint and of Right to Request Disposition," to be
> signed and dated by the warden of the custodial
> institution where the inmate is held, and then signed
> and dated by the inmate to acknowledge receipt.

> Form 2: "Inmate's Notice of Place of Imprisonment and
> Request for Disposition of Indictments, Informations,
> or Complaints," to be addressed to the Prosecutor in
> the jurisdiction where a charge is pending, signed and
> dated by the inmate.

> Form 3: "Certificate of Inmate Status," to be signed
> and dated by the warden, and to include: (1) The term
> of commitment under which the prisoner is being held,
> (2) the time already served, (3) time remaining to be
> served on the sentence, (4) the amount of good time
> earned, (5) the date of parole eligibility of the
> prisoner, (6) the decision of the parole board relating
> to the prisoner, (7) the maximum expiration date under
> the present sentence, and (8) detainers currently on
> file against this inmate from the same state.

> Form 4: "Offer to Deliver Temporary Custody," to be
> signed by the warden.

In this case, however, Pike County officials obtained temporary custody of Miller under Article IV of the IAD.  Article IV provides:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

(b) Upon receipt of the officer's written request as provided in paragraph (a) hereof, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the State parole agency relating to the prisoner.  Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving State who have lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

(c) In respect of any proceeding made possible by this Article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

(d) Nothing contained in this Article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph (a) hereof, but such delivery may not be opposed or denied on the ground that the executive authority of the sending State has not affirmatively consented to or ordered such delivery.

(e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and

the court shall enter an order dismissing the same with
prejudice.

N.J.S.A. 2A:159A-4.

IAD violations, as alleged by Miller in this case, are
cognizable under 42 U.S.C. § 1983, see Cuyler, 449 U.S. at 449-
50, but only in certain situations.  See Rhodes v. Schoen, 574
F.2d 968, 970 (8th Cir. 1978)(requiring merely general compliance
with IAD), cert. denied, 439 U.S. 868 (1978).  For example, the
denial of a pre-transfer hearing, which is guaranteed by the IAD,
is a breach of a prisoner's due process rights.  Cuyler, 449 U.S.
at 449.  Conversely, a delay of several months in forwarding a
final disposition request does not create a § 1983 cause of
action so long as the prisoner is afforded his procedural due
process rights, such as a pre-transfer hearing and a speedy
trial.  Rhodes, 574 F.2d at 970.

Here, Miller alleges that he was denied due process with
respect to the IAD procedures.  First, Miller claims that his
request under Article III for a final disposition of all
detainers against him in Pike County, Pennsylvania was
circumvented by the Pike County defendants because they filed an
Article IV request for temporary custody.  It appears that he
takes issue with the delay by the New Jersey prison authorities
in forwarding his Article III request.  This request was made by
Miller in May 2006, but was not transmitted or received by the
Pike County defendants until August 2006.

Based on these allegations alone, this Court does not find a cognizable § 1983 violation of IAD procedures.  The request forms were delayed by only a few months.  Indeed, it would appear from the allegations in the Complaint that the IAD forms had been sent by the New Jersey state prison officials in August 2006, and Pike County received them on August 8, 2006.  Therefore, this short delay, especially where it appears that the parties substantially followed the initial procedures in filing Article III forms, does not give rise to a cognizable § 1983 action.

However, Miller also claims that he did not receive a trial date within the 180-day period as required under the IAD. Instead, Pike County took custody of plaintiff on December 4, 2006, pursuant to an Article IV request for temporary custody. Under Article IV, a trial must be commenced within 120 days from the date the prisoner is delivered into custody.  The Complaint is not clear as to when the trial commenced, although a "nolle prosequi with leave" was entered on August 10, 2007, which was more than eight months after Miller was taken into custody, and almost a year after plaintiff's Article III forms were received by Pike County.  Under a "nolle prosequi without leave" procedure, a defendant is discharged from custody and subject to no obligation to report to the court, but the prosecutor can reinstate the indictment at any time upon application to the court.  The Supreme Court has held that the indefinite postponement of the prosecution, over the defendant's objection, "clearly" denied the defendant the right to a speedy trial.  See

<u>Klopfer v. North Carolina</u>, 386 U.S. 213, 222 (1967). Thus, if Miller's allegations are true, then he may have a claim for dismissal of his indictment for violation of the IAD procedures. Nevertheless, this claim is subject to review in a § 2254 habeas petition only after Miller has exhausted his state court remedies. Accordingly, this IAD claim will be dismissed without prejudice at this time.

In addition, Miller alleges that he did not receive a pre-transfer hearing to which he was entitled under the IAD. In this regard, it would appear that Miller may have alleged facts to support a § 1983 claim. He clearly alleges that he did not receive a pre-transfer hearing at the time the Pennsylvania State Troopers came to take him into custody for trial in Pike County, even though Miller expressly challenged their authority to act and requested a hearing before extradition. Therefore, this Court will allow plaintiff's IAD claim respecting the denial of a pre-transfer hearing to proceed at this time, as against the New Jersey state officials, Hayman, Sherrer, Muse, Hendricks, Lt. Smith and Lewis.[7]

F.   <u>Unlawful Arrest and Seizure Claims</u>

Miller also alleges that unlawfully arrested or seized on December 4, 2006, in violation of his rights under the Fourth Amendment. Because it is clear from the allegations in the

---

[7]   This claim also appears to allege that these defendants later failed to respond to discovery requests for this information at Miller's habeas proceeding in Pike County.

Complaint that plaintiff's seizure was effected pursuant to an IAD request for temporary custody arising from a Pike County criminal warrant, this Court finds no violation of plaintiff's Fourth Amendment rights.  Accordingly, these claims, as alleged in Counts One, Two and Three of the Complaint will be dismissed for failure to state a claim.

G.   State Law Claims

     Miller next alleges state law claims of intentional infliction of emotional distress and violations of New Jersey constitutional law.  To the extent that these claims relate to plaintiff's Eighth Amendment claims of excessive force and failure to protect, as these claims are proceeding at this time, this Court may exercise supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(a).

H.   Section 1985 Claim

     Section 1985 is enlisted by plaintiffs when alleging claims of conspiracy.  The Supreme Court has interpreted both § 1985(3) and the second clause of § 1985(2) similarly, finding that each contains language "requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." Kush v. Rutledge, 460 U.S. 719, 725 (1983).  It is a well-settled constitutional interpretation that "intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind

the conspirators' action." Id., 460 U.S. at 726.  Here, Miller
fails to state a cause of action for conspiracy under § 1985.

Indeed, the Complaint fails to allege any facts from which
one could infer an agreement or understanding among the
defendants to violate plaintiff's rights, or to discriminate
against him under § 1985.  Therefore, Miller's conspiracy claim
under § 1985 will be dismissed without prejudice to plaintiff
amending his Complaint to allege those facts necessary to cure
these deficiencies.

I.   Request for Appointment of Counsel

Finally, Miller filed a request for appointment of counsel
in this action on February 2, 2009.  (Docket entry no. 5).
Indigent persons raising civil rights claims have no absolute
constitutional right to counsel.  Parham v. Johnson, 126 F.3d
454, 456-57 (3d Cir. 1997).  In determining whether to appoint
counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must
> have some merit in fact and law. ... If the district
> court determines that the plaintiff's claim has some
> merit, then the district court should consider the
> following factors:
>
>    (1) the plaintiff's ability to present his or her
> own case;
>    (2) the complexity of the legal issues;
>    (3) the degree to which factual investigation will
> be necessary and the ability of the plaintiff to pursue
> such investigation;
>    (4) the amount a case is likely to turn on
> credibility determinations;
>    (5) whether the case will require the testimony of
> expert witnesses;
>    (6) whether the plaintiff can attain and afford
> counsel on his own behalf.

[Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994).] This list of factors is not exhaustive, but instead should serve as a guide post for the district courts.

Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases. Id. at 157.

Parham, 126 F.3d at 457-58.

Applying these factors to this case, the Court is not inclined to allow appointment of counsel at this time. Plaintiff's complaint is only recently filed, and while this Court has screened the Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the merits of Miller's claims, the factual and legal issues, "have not been tested or developed by the general course of litigation, making [a number of factors] of Parham's test particularly difficult to evaluate." Chatterjee v. Philadelphia Federation of Teachers, 2000 WL 1022979 at *1 (E.D. Pa. July 18, 2000)(stating that unlike Parham, which concerned a directed verdict ruling, and Tabron, which involved summary judgment adjudication, plaintiff's claims asserted in complaint and motions "have barely been articulated" and have distinctive procedural posture).

With regard to the Tabron/Parham factors, Miller has not demonstrated at this stage of proceedings, the complexity of legal issues, the degree to which factual investigation will be necessary, or that he will be in need of expert witnesses. Likewise, in the case at issue, the Court finds that Miller is

capable of presenting the claims at this early stage.  He has presented to this Court without the assistance of counsel a well-articulated and coherent Complaint.  The Court recognizes that issues may arise in the course of this litigation which may raise a question as to Miller's need for counsel, for instance, the possible need for expert witnesses, if the case proceeds to that stage of discovery.  In that instance, the Court will consider a renewed motion for appointment of counsel.  At this point in the litigation, however, the plaintiff's motion for appointment of counsel will be denied, without prejudice.

V.   CONCLUSION

Therefore, for the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety as against defendant, the New Jersey Department of Corrections, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii) and 1915A(b)(1) and (2). Likewise, the Complaint will be dismissed with prejudice, in its entirety, as against the prosecutor defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii) and 1915A(b)(1) and (2).  The Complaint also will be dismissed with prejudice against defendant Goble, for failure to state a claim.  Plaintiff's claims asserting unlawful arrest and seizure in violation of the Fourth Amendment, his claim asserting false disciplinary charges, his conspiracy claim under 42 U.S.C. § 1985, and his claims under the Interstate Agreement on Detainers ("IAD") alleging delay in trial in violation of his right to a speedy trial, will be dismissed without prejudice, in their entirety, for failure to state a

claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  However, plaintiff's remaining claims alleging (1) a failure to protect plaintiff from harm in violation of the Eighth Amendment, (2) excessive force in violation of the Eighth Amendment, and (3) denial of a pre-transfer hearing in violation of IAD procedures will be allowed to proceed at this time, as to the remaining named defendants. Plaintiff's state law claims, to the extent that they are related to the proceeding § 1983 claims in this action, also will be allowed to proceed at this time, pursuant to this Court's exercise of supplemental jurisdiction under 28 U.S.C. § 1367(a). Finally, plaintiff's motion for appointment of counsel will be denied without prejudice at this time.  An appropriate order follows.

DENNIS M. CAVANAUGH
United States District Judge

Dated: 2/25/09