NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICKY MILLER : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, : | **OPINION** |
| vs. : | |
| : | Civil Action No. 08-CV-03335 (DMC) |
| NEW JERSEY DEPARTMENT OF : | |
| CORRECTIONS, et al, : | |
| Defendants. : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion for a preliminary injunction by Plaintiff Ricky Miller ("Plaintiff") pursuant to Fed. R. Civ. 65. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. The Court has reviewed the submissions of the parties, and for the reasons set forth below, Plaintiff's request for relief is **denied**.

I. **BACKGROUND**[1]

Ricky Miller ("Plaintiff") is in custody of the New Jersey Department of Corrections ("NJDOC") at Northern State Prison ("NSP") serving a 20-year sentence for robbery and related offenses, imposed in Warren County, New Jersey, Superior Court. Plaintiff was initially arrested on those charges by Warren County authorities on November 24, 2004. Plaintiff was living in East Stroudsburg, Pennsylvania and working in New Jersey at the time of his arrest. Plaintiff was incarcerated at the Warren County Correctional Center from the date of his arrest until shortly after his sentencing in April 2006, at which time he entered NJDOC custody.

---

[1] These facts have been adopted from the Parties' respective submissions.

In June 2005, while Plaintiff was incarcerated at the Warren County Correctional Center awaiting trial, he learned that Monroe County, Pennsylvania had also lodged Robbery charges against him and a detainer, which was sent to the jail. Upon learning of those charges, Plaintiff took no immediate action.

In February 2006, Pike County, Pennsylvania also lodged charges and a detainer against Plaintiff, which was sent to the Warren County Correctional Center. Plaintiff does not recall Warren County Correctional Center staff informing him of these charges.

Shortly after Plaintiff was transferred to NJDOC custody in April 2006, Plaintiff informed NJDOC authorities that he wanted the Monroe County, Pennsylvania charges to be resolved. On or about May 12, 2006, Defendant Catherine Lewis, a NJDOC employee, presented Plaintiff with an Interstate Agreement on Detainers ("IAD") Form I, Request for Disposition. Form I allows an inmate to request final disposition of untried charges pursuant to Article III of the IAD, and expressly states that such request is deemed a waiver of extradition. Plaintiff signed Form I requesting final disposition of the untried charges against him and returned it to Defendant Lewis. At the time Plaintiff signed the IAD Form I it was not complete and did not identify the jurisdiction of the pending charges. Plaintiff admitted he was aware that by signing the IAD Form I he was requesting disposition of the open charges and thereby waiving extradition.[2] NSP staff apparently did not immediately send out the forms. On August 8, 2006, Defendant Lewis faxed Plaintiff's IAD forms to the Pike County District Attorney's Office.

---

[2] During his deposition, Plaintiff admitted that signing the form constitutes a waiver of extradition. However, despite this acknowledgment, Plaintiff also argued during his deposition that a hearing is required prior to extradition. The statute Plaintiff bases his argument on appears to be N.J.S.A. 2A:160-1, 160-30, which requires a hearing prior to extradition unless such person consents to extradition and thereby waives a hearing.

Also in August 2006, Plaintiff first became aware of the Pike County charges when he was approached by an NJDOC official who asked him to sign IAD forms requesting disposition of the Pike County, Pennsylvania charges, and thereby waiving extradition.  Plaintiff believed that the IAD form he signed in May should also apply to the Pike County, Pennsylvania charges and he "did not want to start the procedure over again."  Def.'s Mot. Summ. J. Ex.1 at 30-31, Apr. 19, 2010, ECF No. 85.  Therefore, Plaintiff indicated that he did not wish to have his Pike County, Pennsylvania charges resolved, and returned Form I to the NJDOC staff member.  On August 11, 2006, the Pike County District Attorney's Office sent a completed Form V, which is a prosecutor's request for temporary custody pursuant to Article IV of the IAD, to NSP for Plaintiff.

In early November 2006, the Pike County District Attorney's Office then sent IAD Form VI, which designates the officers who will transport an inmate under the IAD, and a copy of the Form V, which had been sent to NSP in August, to the IAD Coordinator for the Pennsylvania Department of Corrections.  The IAD Form VI designated Pennsylvania State Troopers Orlando and McCarthy to transport Plaintiff, and they arrived at NSP to transport Plaintiff to Pike County on December 4, 2006.  When the Troopers attempted to handcuff Plaintiff to transport him to his vehicle, Plaintiff alleges he lost his balance and fell onto a bench, and further alleges that the Troopers punched him in the face, he lost consciousness, and upon regaining consciousness was taken to the prison infirmary and treated for a cut.  The Troopers subsequently transported Plaintiff to Pike County.  No hearing regarding the transfer took place prior to Plaintiff's transfer on December 4, 2006.  Upon arrival in Pike County, Plaintiff appeared before a Magistrate and was then taken to the Pike County Correctional Facility.

While in Pike County, Plaintiff filed an application for Writ of Habeas Corpus in the Pike

County Court of Common Pleas, through which he challenged the procedures used to effectuate his transfer. Specifically, Plaintiff argued that his waiver of extradition was no longer valid and his detention in the Pennsylvania was illegal. In denying Plaintiff's Writ of Habeas Corpus, the Pennsylvania Court determined that Plaintiff's transfer from NSP to Pennsylvania was pursuant to Article III of the IAD, and, pursuant to Article III(e) of IAD, by requesting final disposition of the charges Plaintiff had waived extradition. Def.'s Mot. Summ. J. Ex.3 at 4-6, Apr. 19, 2010, ECF No. 85.

Plaintiff filed the underlying civil suit in this case alleging violations of his constitutional rights under 42 U.S.C. §§ 1983, 1985 and claims under New Jersey state law. Plaintiff subsequently filed this motion for a preliminary injunction on the grounds that the Defendants unjustifiably interfere with his access to the courts, retaliate against him for filing grievances, and inflict cruel and unusual punishment causing Plaintiff to suffer, and continue to suffer, serious physical and mental injuries.

## II.   LEGAL STANDARD

"A decision to grant or deny a preliminary injunction is within the sound discretion of the district court." Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc., 2010 WL 2428561 (D.N.J. June 9, 2010) (citing Oakley, Inc. v, Sunglass Hut Int'l, 316 F.3d 1331,1339 (Fed. Cir. 2003)); see also Spartacus, Inc. v. Borough of McKees Rocks, 694 F.2d 947, 949 (3d Cir. 1982). In determining whether a preliminary injunction should be granted, a district court must consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the

nonmoving party; and (4) whether granting preliminary relief will be in the public interest.

Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994); see also ACLU of New Jersey v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996); CIBA-GEIGY Corp. v. Bolar Pharm. Co., Inc., 747 F.2d 844, 850 (3d Cir. 1984) cert. denied 471 U.S. 1137 (1985). Plaintiff bears the burden of showing that these factors weigh in favor of granting the injunction. Kos Pharm. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). "Only if the movant produces evidence sufficient to convince the [court] that all four factors favor preliminary relief should the injunction issue." Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990); see also Nutrasweet Co. v. Vit-Mar Enter. Inc., 176 F.3d 151, 153 (3d Cir. 1999). Furthermore, the Third Circuit has repeatedly held that a preliminary injunction is an "extraordinary remedy" that "should be granted only in limited circumstances." Kos Pharm. Inc., 369 F.3d at 708; see also Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).

**III.    DISCUSSION**

A. Irreparable Harm

This Court first addresses whether Plaintiff can demonstrate irreparable harm, since "[in] the absence of irreparable injury, no preliminary injunction would lie, even if the other three elements... were found." Nutrasweet Co., 176 F.3d at 153. "Establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a 'clear showing of immediate irreparable harm'" absent injunctive relief. Hoxworth v. Blinder, Robinson & Co. Inc., 903 F.2d 186, 205 (3d Cir. 1990) (citing ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 225 (3d Cir. 1987)).

Irreparable harm cannot be presumed, and "must be established as a separate element, independent of any showing of likelihood of success." King Pharm. Inc. V. Sandoz, Inc. 2010 WL 1957640, *5 (D.N.J. May 17, 2010) (citing Winter v. Natural Resources Defense Counsel, Inc., 129 S. Ct. 365, 375-76 (2008)). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Instant Airfreight Co. v. C.F. Airfreight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). Thus, the "preliminary injunction must be the *only* way of protecting the plaintiff from harm." Id. (emphasis added); see also Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994). Irreparable injury occurs when money damages are difficult to ascertain or would be inadequate. In re Arthur Treacher's Franchise Litig., 689 F.2d 1137, 1146 (3d Cir. 1982). Failure to establish irreparable injury automatically results in denial of a preliminary injunction. Instant Airfreight Co., 882 F.2d at 800; see also Nutrasweet Co., 176 F.3d at 153.

Here, Plaintiff argues that he was harmed because he was retaliated against for pursuing his due process rights and his access to the courts was restricted. The basis for his claims appears to be April 1 incident in which Plaintiff was stopped on his way to legal mail, a physical altercation with a Correctional Officer ensued, and Plaintiff was subsequently without access to his legal books, documents, or mail for a period of time.[3] However, Plaintiff has not alleged

---

[3] In his reply to Defendants' opposition to the preliminary injunction, Plaintiff also argues that the physical altercation that occurred the day he was extradited to Pennsylvania demonstrates that he was retaliated against for pursuing his due process rights, specifically through requesting his extradition paperwork. Plaintiff's claim that the physical altercation was retaliatory is conclusory and insufficient to demonstrate irreparable injury. Plaintiff's extradition, and the circumstances surrounding it, form the basis for his Complaint in this case, and while he has not demonstrated irreparable injury to justify granting a preliminary injunction, this Court makes clear that it has made no findings with regard to the validity of those claims.

facts sufficient to satisfy his burden of proving immediate, irreparable harm.  Plaintiff's claims that he has been retaliated against for filing the underlying suit are conclusory, and seem to be based solely on his personal beliefs.  He has offered no facts to support his claim that he is being treated negatively due to his civil suit or that the actions taken by correctional officers are in any way motivated by Plaintiff's suit.[4]

Plaintiff's argument that he has been denied access to the courts is also without support.  Plaintiff focuses on the fact that for a period of time in April he was without access to his legal documents and books, and, as a result, had to ask this Court for an extension of time to respond to Defendants' Motion for Summary Judgment.  However, Plaintiff has failed to show how he was harmed as this Court granted his request for an extension of time and such extension has no effect on the outcome of his case.   Plaintiff has not alleged any occasion where he was unable to file with this Court within a reasonable time, or any time he was completely denied access.  Furthermore, this Court notes Plaintiff has had continual access to this Court as demonstrated by the motions, letters, and responses he has filed on twelve (12) occasions since the April incident.

Given that Plaintiff has not alleged facts sufficient to prove that he was harmed, or that the alleged harm was irreparable and could only be cured by a preliminary injunction, Plaintiff is unable to satisfy his burden of showing this factor weighs in favor of granting a preliminary injunction.  Therefore, his motion for a preliminary injunction must, by necessity, fail.

---

[4]In his three page letter to the disciplinary hearing officer, Plaintiff describes the April 1 incident in great detail.  Plaintiff's Ex. 5.  Nothing in his description of the event suggests that he was specifically targeted, that the correctional officers were punishing him for pursuing his civil suit, or that the correctional officers involved were even aware of the underlying claims and parties involved.  Plaintiff also included the disciplinary report filed against him.  Plaintiff's Ex. 6.  In looking at the correctional officer's account in disciplinary report, there is also nothing to suggest that the altercation was connected in any way to Plaintiff's civil suit.

B.  Likelihood of Success on the Merits

Since this Court has already determined that Plaintiff has not demonstrated irreparable injury, Plaintiff's likelihood of success on the merits will be addressed only briefly to clarify a point made in Plaintiff's motion.

In arguing that there is a likelihood of success on the merits with regard to his extradition claims, Plaintiff asserts that this Court, in its February 25, 2009 Opinion, decided that Pike County officials obtained custody of Plaintiff under Article IV of the IAD.  Article IV requires a pre-transfer hearing, and since all parties agree Plaintiff was not afforded a pre-transfer hearing, Plaintiff argues this determination proves there is reasonable probability of his success on the merits.  However, Plaintiff's argument is based on an incorrect and incomplete reading of this Court's February 25, 2009 Opinion.  Given that the February 25, 2009 Opinion was concerned with whether the Plaintiff's claims could survive the initial screening, this Court was required to view all assertions in light most favorable to the Plaintiff.  <u>Miller v. New Jersey Dep't of Corrections</u>, 2009 WL 482379, *4 (D.N.J. Feb. 25, 2009).  This was made clear when this Court stated that the "factual allegations are taken from the Complaint, and are accepted *for the purposes of this screening only.  The Court has made no findings as to the veracity of Plaintiff's allegations*." <u>Miller</u>, 2009 WL 482379 at *1 (emphasis added).  Therefore, this Court has not yet made a determination as to the veracity of any of Plaintiff's allegations, including whether his custody was obtained under Article IV.  This Court notes however that when confronted with the same issue, the Court of Common Pleas of Pike County, Pennsylvania found that Plaintiff was returned to Pennsylvania under Article III, which does not require a pre-transfer hearing, not under Article IV. Def.'s Mot. Summ. J. Ex.3 at 4-6, Apr. 19, 2010, ECF No. 85.

C. Harm to Defendants and Public Interest

The Third Circuit has "held that these latter two factors should be taken into account only when they are relevant." Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994); see also Hoxworth, 903 F.2d at 196.  These factors are only relevant if Plaintiff has first established *"both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted" because a preliminary injunction cannot be sustained "where either or both of these prerequisites are absent." Id. (internal citations omitted). Since at least one of these prerequisites is absent, this Court need not address the potential harm to Defendants from or the public interest in granting a preliminary injunction.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's motion for preliminary injunction is denied.  An appropriate Order accompanies this Opinion.

 S/ Dennis M.Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Dated:      November  17,  2010
Original:    Clerk
cc:          All Counsel of Record
             Hon. J.A. Dickson, U.S.M.J.
             File

9