NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICKY MILLER, | |
| Plaintiff, | Hon. Dennis M. Cavanaugh |
| v. | OPINION |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., | Civil Action No. 08-3335 (DMC) |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Defendants' Frank Orlando, Edward J. McCarthy, and Jennifer Hendricks ("Defendants") Motion for Summary Judgment pursuant to Fed. R. Civ. P.56(c). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motion for Summary Judgment is **granted**.

I.   **BACKGROUND**[1]

Plaintiff Ricky Miller ("Plaintiff"), an inmate in the custody of the New Jersey Department of Corrections ("NJDOC") at the Northern State Prison ("NSP"), brings claims pro se under 42 U.S.C. §§ 1983, 1985 and New Jersey state law against a number of defendants. Among the named

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

defendants are Pennsylvania Department of Corrections Official Jennifer Hendricks and Pennsylvania State Troopers Frank Orlando and Edward J. McCarthy. The claims relate to Plaintiff's temporary transfer from the custody of the NJDOC to Pennsylvania authorities in late 2006.

Plaintiff is serving a 20-year sentence for robbery and related offenses stemming from a November 24, 2004 arrest in Warren County, New Jersey. While incarcerated at the Warren County Correctional Center awaiting trial, Plaintiff learned that Monroe County, Pennsylvania had also lodged robbery charges against him. In February 2006, a second county in Pennsylvania—Pike County, Pennsylvania—lodged additional criminal charges against Plaintiff. Plaintiff either was not informed regarding the Pike County charges or "could not recall being informed."

In spring 2006, Plaintiff was transferred to NJDOC custody and by April, Plaintiff informed NJDOC authorities that he wanted the Monroe County, PA charges resolved. Plaintiff was presented with an Agreement on Detainers ("IAD") Form I, Request for Disposition, on or about May 12, 2006. The form was not complete and did not identify the jurisdiction of the pending charges; nevertheless, Plaintiff signed and returned the form to NJDOC employee, and named defendant in this matter, Catherine Lewis. There is no indication when, whether, or how this signed form was sent, delivered or in any way transmitted to the Monroe County District Attorney's Office.

On August 8, 2006, Defendant Lewis did fax Plaintiff's IAD forms to the Pike County District Attorney's Office. It was during this time period when Plaintiff first learned of the Pike County charges against him after being approached by a NJDOC official asking him to sign IAD forms applicable to the Pike County charges. In response to this request, Plaintiff indicated a belief

2

that the IAD forms he signed in May should apply to the Pike County charges and that he "did not want to start the procedure over again." At this point, Plaintiff signed a second set of IAD forms on which he indicated that he did not wish to exercise his right to have the Pike County, PA charges resolved, and returned the forms to the NJDOC staff member.

After receiving the IAD forms,[2] the Pike County District Attorney's Office, on August 11, 2006, sent a completed IAD Form V—a prosecutor's request for temporary custody of an inmate—for Plaintiff to the Northern State Prison. In early November, the Pike County District Attorney's Office then sent IAD Form VI—designating the officers who will transport an inmate under the Interstate Agreement on Detainers—to Defendant Jennifer Hendricks, IAD Coordinator for the Pennsylvania Department of Corrections. Accompanying Form VI was a copy of the Form V which had previously been sent to NSP. The IAD Form VI designated defendants, Pennsylvania State Troopers Orlando and McCarthy to transport Plaintiff. Defendant Hendricks received the mailing on November 20, 2006, signed the bottom of the form, and, in accordance with the instructions on IAD Form VI, retained a copy, mailed two copies to the Pike County District Attorney, and mailed a copy to the NSP.

Troopers Orlando and McCarthy arrived at NSP to transport Plaintiff to Pike County, PA on December 4, 2006. Plaintiff alleges that one of the Troopers punched him in the face causing him to lose consciousness, and that upon regaining consciousness he was taken to the prison infirmary and treated for a cut. At this point, Plaintiff was placed in Trooper Orlando and McCarthy's vehicle

---

[2] There is no indication as to whether Defendant Lewis faxed to the Pike County District Attorney's Office the May IAD forms or the August IAD forms.

3

and they transported Plaintiff to Pike County, PA. No hearing regarding the transfer took place prior to Plaintiff's transfer on December 4, 2006. Upon arrival in Pike County, Plaintiff appeared before a Magistrate and was then taken to the Pike County Correctional Facility.

While in Pike County, PA, Plaintiff filed an application for Writ of Habeas Corpus in the Pike County Court of Common Pleas, through which he challenged the procedures used to effectuate his transfer. Specifically, Plaintiff challenged his waiver of Extradition as no longer valid and his detention in the Commonwealth of Pennsylvania as illegal. In denying Plaintiff's Writ of Habeas Corpus, the Pennsylvania Court deemed that Plaintiff's transfer from NSP to the Commonwealth of Pennsylvania was pursuant to Article III of the Interstate Agreement on Detainers; and that pursuant to Article III(e) of the same, Plaintiff had waived his right to challenge the transfer. Commonwealth v. Miller, No. 391-CRIMINAL-2006 (Ct. of Common Pleas, Pike County, PA March 19, 2007), ECF No. 85, Ex. 3.

Plaintiff has now filed this civil action asserting the following claims against Defendant Hendricks: a 42 U.S.C. § 1983 due process claim based on her alleged failure to provide Plaintiff with a pre-transfer hearing; a 42 U.S.C. § 1985 conspiracy claim; a negligence claim under New Jersey tort law; and, a due process claim under the New Jersey Constitution. Against Defendants Orlando and McCarthy, Plaintiff asserts the following claims: 42 U.S.C. § 1983 excessive force claims; and, assault, battery, intentional infliction of emotional distress, and negligence claims under New Jersey tort law.

Defendant Hendricks now moves for summary judgment with regard to all claims against her. Defendants Orlando and McCarthy now move for summary judgment with respect to Plaintiff's

§1983 claims to the extent they are brought against them in their official capacities.

**II.    STANDARD OF REVIEW**

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." See Celotex Corp., 477 U.S. at 323. "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. at 330.

"In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

While a court must draw reasonable inferences, the non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). In addition, conclusory allegations are

5

insufficient to establish genuine issues of fact. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 902 (1990). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586.

### III.    CLAIMS AGAINST DEFENDANTS HENDRICKS, ORLANDO, AND MCCARTHY IN THEIR OFFICIAL CAPACITIES

Plaintiff's Second Amended Complaint asserts that he is suing all defendants in their individual and official capacities. As agents of the Commonwealth of Pennsylvania, the Eleventh Amendment bars Plaintiff's § 1983 damages claims against Defendants Hendricks, Orlando, and McCarthy in their official capacities. The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. It is well established that the Eleventh Amendment immunizes states and state agencies from federal suits by private parties. See e.g., Seminole Tribe of Fla v. Fla, 517 U.S. 44, 54 (1996) ("[E]ach State is a sovereign entity in our federal system; and . . . 'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent . . ..'") (internal citation omitted). "That a State may not be sued without its consent is a fundamental rule of jurisprudence . . . [and] it has become established by repeated decisions . . . [that] the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent." Penhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (quoting Ex parte New York, 256 U.S. 490, 497 (1921)).

Eleventh Amendment immunity "extends to suits against departments or agencies of the state having no existence apart from the state." Laskaris v. Thornburgh, 661 F2d 23, 25 (3d Cir. 1981), cert. denied, 469 U.S. 886 (1984). "Suits against state officials in their official capacity . . . should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991). In other words, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citations omitted).

Plaintiff directs this Court to one case in support of his argument that Eleventh Amendment immunity does not apply, United States v. Pa. State Police, 548 F. Supp. 9 (E.D. Pa. 1982).[3] However, Plaintiff finds no support in the case cited. In fact, the case cited swiftly dismissed this type of claim:

> Plaintiff's claim against the State Police can be briefly treated. By virtue of the Eleventh Amendment federal courts are barred from entertaining suits by private parties against states and their agencies, unless the state has consented to the filing of such a suit. Since the State Police are clearly a state agency, and there is no contention that it consented to this suit, there is no subject matter jurisdiction. Consequently, this claim must be dismissed.

United States v. Pa. State Police, 548 F. Supp. 9, 12 (E.D. Pa. 1982) (internal citations omitted)

---

[3] The Court is aware that Plaintiff "does not fully comprehend the Eleventh Amendment immunity" at issue. (Pl.'s Resp. at 4). As a pro se litigant, Plaintiff is given some latitude. However, the standard to be applied to a motion for summary judgment remains unchanged. As described above, once the moving party has met its responsibility in a motion for summary judgment, the motion must be granted unless the nonmoving party can "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

(dismissing claim against State Police and against individual trooper in his official capacity).

For the reasons stated, the same conclusion is warranted here. It is readily apparent that the Pennsylvania Department of Corrections is a department or agency of the Commonwealth of Pennsylvania which has no existence apart from the Commonwealth. See, e.g., Lavia v. Pa., Dep't of Corrections, 224 F.3d 190, 195 (3d Cir. 2000) ("Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity."). Similarly, the Pennsylvania State Police is an agency of the Commonwealth of Pennsylvania having no existence separate from the Commonwealth. 71 Pa.C.S. §§ 61, 65. As state officials, when acting in their official capacities, Defendants Hendricks, Orlando, and McCarthy receive the same protection from suit as provided to their governmental entity. Therefore, Plaintiff's §§ 1983 and 1985 damages claims against them, in their official capacities, cannot stand and Defendants' Motions for Summary Judgment with respect to all counts in the context of their official capacity is granted.

### IV. CLAIMS AGAINST DEFENDANT HENDRICKS IN HER INDIVIDUAL CAPACITY—COUNTS TWELVE, THIRTEEN, FOURTEEN, FIFTEEN, SIXTEEN, AND SEVENTEEN

Plaintiff asserts several claims against Defendant Hendricks in her individual capacity. Each claim will be addressed separately.

#### A. Section 1983 due process claims based on Defendant Hendricks alleged failure to provide Plaintiff with a pre-transfer hearing

Plaintiff alleges that he did not receive a pre-transfer hearing at the time the Pennsylvania Troopers came to take him into custody. Miller v. N.J. Dep't of Corr., No. 08-3335, 2009 U.S. Dist.

LEXIS 14630, at *39 (D. N.J. Feb. 25, 2009). This denial occurred "even though Miller expressly challenged [the Troopers] authority to act and requested a hearing before extradition." Id. Based upon the fact that he did not have a hearing prior to his transfer from New Jersey to Pennsylvania, Plaintiff asserts § 1983 due process claims against Defendant Hendricks. In assessing this claim, the Court must consider whether Plaintiff had a right to a hearing in the first place.

"The Detainer Agreement establishes two procedures under which the prisoner against whom a detainer has been lodged may be transferred to the temporary custody of the receiving State. [Article III] procedures may be invoked by the prisoner; [Article IV procedures] by the prosecuting attorney of the receiving State." Cuyler v. Adams, 449 U.S. 433, 443–44 (1981). The basic difference between an Article III transfer and an Article IV transfer has everything to do with which party initiates the action. Compare 42 Pa.C.S. § 9101 art. III (a) (describing a prisoner's request for final disposition) with 42 Pa.C.S. § 9101 art. IV (a) (describing the procedures for a jurisdiction with pending charges to request temporary custody of a prisoner). Whether a transfer is initiated under Article III or Article IV impacts the procedural elements of the transfer as well as the rights and responsibilities of the parties. Cuyler 449 U.S. at 444–45 ("[P]risoners who are involuntarily transferred under Art. IV are entitled to greater procedural protections than those who initiate the transfer procedure under Art. III."). In order to assess whether Summary Judgment on this issue is appropriate, this Court must first determine whether the Plaintiff's transfer was pursuant to Article III or Article IV.

In determining whether Plaintiff's transfer was pursuant to Article III or Article IV, this Court

is bound by two separate, but interrelated, considerations. First, the Constitution's Full Faith and Credit Clause provides in part that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. CONST. Art. IV, § 1. The Supreme Court has held repeatedly that "credit must be given to the judgment of another state." Baker v. GMC, 522 U.S. 222, 232 (1998). Regarding judgments of another court, the Supreme Court has said that "the full faith and credit obligation is exacting." Id. at 233. More specifically, "[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." Id. Second, under the doctrine of "res judicata,"

> a valid final adjudication of a claim precludes a second action on that claim or any part of it [claim preclusion] and ...an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim [issue preclusion].

Id. at 233 n.5. For the purposes of res judicata, Full Faith and Credit demands that "the judgment of the rendering State gains nationwide force." Id. at 233.

### 1. Full Faith and Credit and Res Judicata

In March 2007, in the criminal matter related to Plaintiff's transfer from New Jersey to Pennsylvania, Plaintiff requested a Writ of Habeas Corpus from the Court of Common Pleas of Pike County, Pennsylvania. Commonwealth v. Miller, No. 391-CRIMINAL-2006 (Ct. Com. Pl., Pike Cnty., Pa. Mar. 19, 2007), ECF No. 85 Ex. 3. Plaintiff's application was denied. Id. In denying relief, Judge Joseph F. Kameen determined that Plaintiff was "returned to the State of Pennsylvania under Article III of the Agreement on Detainers." Id. at 4 (emphasis added). Having determined that

the transfer was made pursuant to Article III, Judge Kameen stated that "Article III(e) specifically provides that any request for final disposition under Article III shall be deemed a Waiver of Extradition." Id. at 5.[4]

The Full Faith and Credit Clause renders this Court bound by the determination of the Court of Common Pleas for Pike County, Pennsylvania that Plaintiff's transfer was done pursuant to Article III of the IAD. Additionally, because this issue was previously determined in Pennsylvania State Court on the merits, res judicata prohibits Plaintiff from now arguing that the transfer was in fact done pursuant to Article IV.

Plaintiff previously challenged the legality of his transfer before the Pike County, Pennsylvania, Court of Common Pleas by way of a habeas corpus proceeding. Plaintiff challenged the timing of his return arguing that under Article III transfers, a receiving state has a 180-day window to try the detainer or the pending charges will be dismissed. Having signed the IAD forms in May 2006, Plaintiff argued that the 180-day window started from the moment he submitted his forms to NJDOC personnel. However, due to a delay in transmitting those forms, the Pike County District Attorney's Office did not receive the forms until August 2006. The Pennsylvania Court of

---

[4]This Court notes that when reviewing Plaintiff's initial complaint pursuant to 28 U.S.C. § 1951(e)(2), this Court stated, "[i]n this case, however, Pike County officials obtained temporary custody of Miller under Article IV of the IAD." Miller v. N.J. Dep't of Corr., No. 08-3335, 2009 U.S. Dist. LEXIS 14630, at *34 (D. N.J. Feb. 25, 2009). However, the February 25, 2009 Opinion was concerned with whether the Plaintiff's claims could survive the initial screening, and this Court was required to view all assertions in light most favorable to the Plaintiff. Id. at *4. This was made clear when this Court stated that the "factual allegations are taken from the Complaint, and are accepted *for the purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations*." Id. at *1 (emphasis added).

11

Common Pleas agreed with Plaintiff that the transfer was pursuant to Article III and therefore the 180-day window applied. However, the court determined that the 180-day window did not start until the Pike County District Attorney received the paperwork in August, and therefore the transfer satisfied the "180 days" requirement. At no time during that proceeding did Plaintiff argue that his transfer was pursuant to Article IV and not Article III. In denying relief, the Pennsylvania court also noted that "Article III(e) specifically provides that any request for final disposition under Article III shall be deemed a Waiver of Extradition." Commonwealth v. Miller, No. 391-CRIMINAL-2006, at 5 (Ct. Com. Pl., Pike Cnty., Pa. Mar. 19, 2007), ECF. No. 85 Ex. 3.

When a detainer is transferred pursuant to Article III, the right to a pre-transfer hearing is waived. See Cuyler v. Adams, 449 U.S. 433, 445 (1981). "Article III (e) provides that 'any request for final disposition made by a prisoner under this Article shall also be deemed to be a waiver of extradition with respect to any charge or proceeding contemplated thereby." Id.; see 42 Pa.C.S. § 9101 art. III (e). The Supreme Court also stated that the "reference to 'waiver of extradition' can reasonably be interpreted to mean 'waiver of those rights the sending state affords persons being extradited.'" Cuyler, 449 U.S. at 445. Under an Article III transfer, Plaintiff was not entitled to a pre-transfer hearing and thus his assertion that Defendant Hendricks, or any defendant for that matter, violated his constitutional rights by not providing a hearing is unfounded.

To the extent that Plaintiff is now alleging the transfer was pursuant to something other than Article III, this Court is unable to entertain that claim by constitutional mandate and Plaintiff is barred from pursuing the claim by the doctrine of issue preclusion.

"A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." Baker, 522 U.S. at 233. Even without this constitutional mandate, the doctrine of res judicata prohibits Plaintiff's claim here. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., 63 F.3d 1227, 1231–32 (3d Cir. 1995) (citing In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992)).

Plaintiff concedes that "res judicata and [collateral] estoppel are applicable to section 1983 actions." (Pl.'s Resp. at 5 (quoting Allen v. McCurry, 445 U.S. 90 (1980))). Plaintiff, however, asserts that the requirements of res judicata and collateral estoppel are not satisfied here because this is a different cause of action and involves different parties. Id. Plaintiff misunderstands the concepts at issue. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 445 U.S. 90, 94 (1980).

The exact circumstances of Plaintiff's transfer were essential to the Court of Common Pleas' judgment. Further, this claim does not involve a different cause of action or different parties. Given this prior adjudication, issue preclusion bars Plaintiff from now arguing an alternate theory regarding his transfer. For these reasons, Plaintiff's §1983 due process claims based on Defendant Hendricks'

alleged failure to provide Plaintiff with a pre-transfer hearing are without merit and Defendant Hendricks' Motion for Summary Judgment with respect to counts twelve, thirteen, and fourteen in the context of her individual capacity must be granted.

### B. Section 1985 conspiracy claim

Plaintiff also asserts a § 1985 claim against Defendant Hendricks alleging a conspiracy to violate his civil and constitutional rights. Plaintiff appears to allege that Defendant Hendricks and other defendants conspired to deprive him of his equal protection rights in two ways. First, Plaintiff alleges that Defendant Hendricks and the other defendants conspired to use incorrect procedures relating to IAD paperwork. Second, Plaintiff apparently alleges that Defendant Hendricks and the other defendants conspired to deny him a pre-transfer hearing.

Under 42 U.S.C. § 1985(3),

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of person of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). This Court previously found that Plaintiff's original Complaint "fail[ed] to allege any facts from which one could infer an agreement or understanding among the defendants to violate plaintiff's rights, or to discriminate against him under § 1985." Miller, 2009 U.S. Dist. LEXIS 14630 at *41. Accordingly, Plaintiff's conspiracy claim was dismissed without prejudice in order for Plaintiff to amend his Complaint to allege facts necessary to cure those deficiencies. Id. Plaintiff fails to meet his burden.

In Plaintiff's Second Amended Complaint and Response to Motion for Summary Judgment,

14

he attempts to supplement the conspiracy claim by identifying each defendant and their respective roles.[5] The Second Amended Complaint references an alleged race-based remark, asserts that Plaintiff is classified as a "special needs inmate," and argues that Defendant Hendricks authorized Defendants Orlando and McCarthy to "go in disguise (as Police Officers), on the highway." These additions are insufficient.

> [I]n order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (citing United Bhd. Of Carpenters and Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828–29 (1983). In addition, "[t]o demonstrate a conspiracy under Section 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of state law." Green v. City of Paterson, 971 F. Supp. 891, 908 (D. N.J. 1997).

Plaintiff does not meet this standard. There is no evidence that Defendant Hendricks was part of any conspiracy. As Defendant Hendricks points out in her motion for summary judgment, "there is no evidence that [Defendant Hendricks] had any contact whatsoever with any of the alleged co-conspirators . . . , there is no evidence that she even knew the Plaintiff's race . . . [and] there is no evidence that she played any role in [] granting or denying the pre-transfer hearing." (Defs.' Mem. at 11).

Here, like before, Plaintiff fails to state a cause of action for conspiracy under § 1985.

**C. Plaintiff's negligence claim under New Jersey tort law is barred by sovereign**

---

[5] Each defendant is in someway involved in corrections.

**immunity as codified in the New Jersey Tort Claims Act.**

In addition to federal claims under §§ 1983 and 1985, Plaintiff brings a "negligence" claim against Defendant Hendricks. This claim as asserted in the Complaint is vague but generally it is as follows: Defendant Hendricks, as IAD Coordinator, had a duty to Plaintiff to ensure that proper procedure was followed; Defendant Hendricks breached that duty by authorizing Troopers Orlando and McCarthy to transfer Plaintiff when she knew or should have known that proper procedures were not followed, including the denial of a pre-transfer hearing; and that Defendant Hendricks' breach caused damages to Plaintiff. This Court need not reach the merits of Plaintiff's negligence claim because New Jersey has provided Defendant Hendricks with immunity by statute.

Under the New Jersey Tort Claims Act, "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." N.J.S.A. § 59:3-3. In the context of Plaintiff's transfer, Defendant Hendricks was executing and enforcing provisions of the IAD in accordance with her duties. The only question that remains is whether she performed her duties in good faith. One court, considering this "good faith" requirement at the summary judgment stage described the requirement as follows:

> Under [the New Jersey Tort Claims Act], immunity may be established 'if the public employee can show either objective or subjective good faith. If a public employee's conduct is objectively reasonable, subjective good faith need not be established to prevail on a motion for summary judgment. Subjective good faith remains available to a public employee as a second line of defense, which he may raise at trial even if he was not acting reasonably. To pierce this section's qualified immunity, a plaintiff must prove more than ordinary negligence.

Green v. City of Paterson, 971 F. Supp. 891, 910 (D. N.J. 1997) (internal citations omitted).

As previously established, Defendant Hendricks' conduct was very limited in this matter. Her conduct was limited to signing IAD Form VI which authorized Troopers McCarthy and Orlando to

16

transport Plaintiff to Pennsylvania. The evidence of record shows that she subjectively and objectively acted in good faith in doing this act.

Despite Defendant Hendricks' limited involvement, Plaintiff argues that Defendant Hendricks is not immune from state tort law claims "as [the] New Jersey Tort Claim[s] Act creates [an] exception to sovereign immunity." (Pl.'s Resp. to Mot. for Summ. J. ("Pl.'s Resp.") at 15). Plaintiff attempts to invoke a provision in the New Jersey Tort Claims Act which provides that "[n]othing in [the New Jersey Tort Claims Act] shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. 59:3-14.

New Jersey state courts have held that in this context, "[c]arelessness or poor decision making do not constitute actual fraud, actual malice or wilful misconduct." Van Engelen v. O'Leary, 732 A.2d 540, 546 (N.J. Super. Ct. Ap. Div. 1999). Instead, "[t]hose terms connote commission of a forbidden act with actual . . . knowledge that the act is forbidden." Id. "Willful misconduct . . . requires much more than an absence of good faith and 'much more' than negligence." Hill v. Algor, 85 F. Supp. 2d 391, 411–12 (D. N.J. 2000) (citation omitted).

As stated in Green, "[t]o pierce [the Act's] qualified immunity, a plaintiff must prove more than ordinary negligence." Green, 971 F. Supp. at 910. Plaintiff has not met this burden. There is no indication in the record that Defendant Hendricks acted negligently; and there is certainly no evidence suggesting her conduct constituted a crime or even approached willful misconduct. As such, under the New Jersey Tort Claims Act, Defendant Hendricks is immune from a claim of negligence in this matter.

### D. Defendant Hendricks is entitled to judgment in her favor with respect to claims under the New Jersey Constitution

Plaintiff's final claim against Defendant Hendricks is a due process violation of the New Jersey Constitution. There is little explanation of this claim in Plaintiff's Second Amended Complaint, but presumably Plaintiff is pursuing the same due process claim alleged under Section 1983. "The New Jersey Supreme Court has held that the Constitution of the State of New Jersey may provide a private cause of action premised upon alleged violations of the State constitution." Scully v. Borough of Hawthorne, 58 F. Supp. 2d 435, 459 (D. N.J. 1999) (citing Peper v. Princeton Univ. Bd. of Trs., 389 A.2d 465 (N.J. 1978)). While a private cause of action is permitted, Plaintiff is unable to establish a violation of his rights in this instance.

As the New Jersey courts have explained, "[the New Jersey] Supreme Court follows the same standards developed by the United States Supreme Court under the federal Constitution for resolving due process claims under the New Jersey Constitution." In re "Plan for orderly withdrawal" of Twin City Fire Ins., 591 A.2d 1005, 1012 n.7 (N.J. Super. Ct. App. Div. 1991) (citing State Farm Mutual Ins. Co. v. State, 590 A.2d 191 (N.J. 1991)).

As explained in Part IV.A above, Plaintiff has not suffered a due process claim under the federal Constitution. As such, he cannot establish such a claim under the New Jersey Constitution.

### V. CONCLUSION

Defendants have the initial responsibility to inform the Court as to its basis for motioning for summary judgment. Having met this initial burden, Plaintiff can only survive

the motion by providing sufficient facts to establish the existence of an element essential to his case. Plaintiff has failed to meet this burden. For the reasons stated, it is the finding of this Court that Defendants' Frank Orlando, Edward J. McCarthy, and Jennifer Hendricks motion for Summary Judgment is **granted**. An appropriate Order accompanies this Opinion.

                                                    S/Dennis M. Cavanaugh
                                                    Dennis M. Cavanaugh, U.S.D.J.

Date:         December   29   , 2010
Orig.:        Clerk
cc:          All Counsel of Record
              File