NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICKY MILLER, <br><br> Plaintiff, <br><br> v. <br><br> GEORGE HAYMAN, et al., <br><br> Defendants. | Hon. Dennis M. Cavanaugh, U.S.D.J. <br><br> Civil Action No. 08-cv-3335-DMC-JAD <br><br> OPINION |

**DICKSON, U.S.M.J.**

This matter comes before the Court upon application by *pro se* Plaintiff Ricky Miller ("Plaintiff") for the appointment of *pro bono* counsel pursuant to 28 U.S.C. § 1915(e)(1). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. After carefully considering the Plaintiff's submissions, and based upon the following, it is the finding of the Court that Plaintiff's application is **granted**.

I.  **BACKGROUND**[1]

Ricky Miller ("Plaintiff") is in custody of the New Jersey Department of Corrections("NJDOC") at Northern State Prison ("NSP") serving a 20-year sentence for robbery and related offenses, imposed in Warren County, New Jersey, Superior Court. Plaintiff was initially arrested on those charges by Warren County authorities on November 24, 2004. Plaintiff

---

[1] For purposes of this motion, the Court adopts the recitation of facts set forth in Judge Cavanaugh's November 17, 2010 Opinion denying Plaintiff's motion for preliminary injunction.

1

was living in East Stroudsburg, Pennsylvania and working in New Jersey at the time of his arrest. Plaintiff was incarcerated at the Warren County Correctional Center from the date of his arrest until shortly after his sentencing in April 2006, at which time he entered NJDOC custody.

In June 2005, while Plaintiff was incarcerated at the Warren County Correctional Center awaiting trial, he learned that Monroe County, Pennsylvania had also lodged robbery charges against him and a detainer, which was sent to the jail. In February 2006, Pike County, Pennsylvania also lodged charges and a detainer against Plaintiff, which was sent to the Warren County Correctional Center.

Shortly after Plaintiff was transferred to NJDOC custody in April 2006, Plaintiff informed NJDOC authorities that he wanted the Monroe County, Pennsylvania charges to be resolved. On or about May 12, 2006, Defendant Catherine Lewis, a NJDOC employee, presented Plaintiff with an Interstate Agreement on Detainers ("IAD") Form I, Request for Disposition. Form I allows an inmate to request final disposition of untried charges pursuant to Article III of the IAD, and expressly states that such request is deemed a waiver of extradition. Plaintiff signed Form I requesting final disposition of the untried charges against him and returned it to Defendant Lewis. At the time Plaintiff signed the IAD Form I it was not complete and did not identify the jurisdiction of the pending charges. Plaintiff admitted he was aware that by signing the IAD Form I he was requesting disposition of the open charges and thereby waiving extradition. NSP staff apparently did not immediately send out the forms. On August 8, 2006, Defendant Lewis faxed Plaintiff's IAD forms to the Pike County District Attorney's Office.

Also in August 2006, Plaintiff first became aware of the Pike County charges when he was approached by an NJDOC official who asked him to sign IAD forms requesting disposition of the

2

Pike County, Pennsylvania charges, and thereby waiving extradition. Plaintiff believed that the IAD form he signed in May should also apply to the Pike County, Pennsylvania charges and he "did not want to start the procedure over again." Def.'s Mot. Summ. J. Ex.1 at 30-31, Apr. 19, 2010, ECF No. 85. Therefore, Plaintiff indicated that he did not wish to have his Pike County, Pennsylvania charges resolved, and returned Form I to the NJDOC staff member. On August 11, 2006, the Pike County District Attorney's Office sent a completed Form V, which is a prosecutor's request for temporary custody pursuant to Article IV of the IAD, to NSP for Plaintiff.

In early November 2006, the Pike County District Attorney's Office then sent IAD Form VI, which designates the officers who will transport an inmate under the IAD, and a copy of the Form V, which had been sent to NSP in August, to the IAD Coordinator for the Pennsylvania Department of Corrections. The IAD Form VI designated Pennsylvania State Troopers Orlando and McCarthy to transport Plaintiff, and they arrived at NSP to transport Plaintiff to Pike County on December 4, 2006. When the Troopers attempted to handcuff Plaintiff to transport him to his vehicle, Plaintiff alleges he lost his balance and fell onto a bench, and further alleges that the Troopers punched him in the face, he lost consciousness, and upon regaining consciousness was taken to the prison infirmary and treated for a cut. The Troopers subsequently transported Plaintiff to Pike County. No hearing regarding the transfer took place prior to Plaintiff's transfer on December 4, 2006. Upon arrival in Pike County, Plaintiff appeared before a Magistrate and was then taken to the Pike County Correctional Facility.

While in Pike County, Plaintiff filed an application for Writ of Habeas Corpus in the Pike County Court of Common Pleas, through which he challenged the procedures used to effectuate his transfer. Specifically, Plaintiff argued that his waiver of extradition was no longer valid and his

detention in Pennsylvania was illegal. In denying Plaintiff's Writ of Habeas Corpus, the Pennsylvania Court determined that Plaintiff's transfer from NSP to Pennsylvania was pursuant to Article III of the IAD, and, pursuant to Article III(e) of IAD, by requesting final disposition of the charges Plaintiff had waived extradition. Def.'s Mot. Summ. J. Ex.3 at 4-6, Apr. 19, 2010, ECF No. 85.

On or about July 3, 2008, Plaintiff filed the underlying civil suit in this case alleging violations of his constitutional rights under 42 U.S.C. §§ 1983, 1985 and claims under New Jersey state law. On or about February 2, 2009, Plaintiff filed an application for *pro bono* counsel which was denied without prejudice. On or about August 2, 2010, Plaintiff submitted this third application for *pro bono* counsel. In his application, Plaintiff cites not only the complexity of the issues but also his indigent and incarcerated status. He further has submitted to the Court multiple letters from attorneys/legal centers that he contacted informing him that they cannot take on his case. At this time, there are currently eleven defendants in this action and Plaintiff's claims include assault and battery, negligence, conspiracy, violations of constitutional, civil, and statutory civil rights, and state law claims of intentional infliction of emotional distress among others.

## II.   LEGAL STANDARD

In *Tabron v. Grace*, the Third Circuit established specific guidelines for determining whether the appointment of *pro bono* counsel is warranted. *See* 6 F.3d 147, 155, 158 (3d Cir. 1993). The Third Circuit emphasized that, as a threshold matter, courts must analyze the substance of an applicant's underlying claim for merit before engaging in any further evaluation. *See id.* Only after a determination that an applicant's claim has merit in fact and law should a court move on to

consider and evaluate the factors outlined in *Tabron*. *See id.* at 155. The other *Tabron* factors include whether:

> (1) the *pro se* party lacks the ability to present an effective case without an attorney;
> (2) the legal issues are complex or, the ultimate legal issues are not complex, but the *pro se* party lacks the familiarity with the rules of evidence and discovery needed to translate understanding of the law into presentation of the proofs;
> (3) factual investigation will be necessary and the party is not adequately able to pursue said investigation;
> (4) the case is likely to turn on credibility determinations;
> (5) the case will require expert testimony; and
> (6) the party is unable to attain and afford counsel on his/her own behalf.

*See Parham v. Johnson*, 126 F.3d 454, 357 (3d Cir. 1997*); Tabron,* 6 F.3d at 155-56.

Courts must consider the ability of the plaintiff to present his or her case without the assistance of counsel. *See id.* at 156. In making this determination, courts "generally should consider the plaintiff's education, literacy, prior work experience, and prior litigation experience." *Id.* Courts should "also consider the difficulty of particular legal issues...the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue investigation." *Id.*

### III. ANALYSIS

In analyzing the merits of Plaintiff's Complaint, the Court is cognizant that a *pro se* plaintiff's complaint is held to a less stringent standard than pleadings filed by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Moreover, the Court recognizes that civil rights allegations are not meritless unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Id.*

In the present case, Plaintiff alleges that Defendants unlawfully took him into custody to extradite him to Pennsylvania and beat him, causing him injuries. Plaintiff also alleges that false

disciplinary reports were filed by Defendants in an effort to cover up the incident. While Plaintiff's claims will require evidentiary support, Plaintiff has established that his claims have sufficient merit to allow the Court to proceed to the second stage of the *Tabron* analysis. *Tabron*, 6 F.3d at 156.

The Court must then look to the ability of Plaintiff to present his case in determining whether to appoint counsel. *Tabron*, 6 F.3d at 156. Plaintiff claims in his application for *pro bono* counsel that his limited comprehension of discovery rules, along with his confinement, will impede his ability to pursue his claims. Although Plaintiff has litigated his claims and has demonstrated he has a basic understanding of his claims and the relevant law, Plaintiff claims that he has received some assistance in preparing previous submissions, but he no longer has such help. The Court is not convinced of Plaintiff's ability to present his case without an attorney, especially considering the need for medical expert testimony for Plaintiff's excessive force and related claims.

Next, the Court must consider the complexity of the particular issues involved and the degree to which factual investigation and/or expert testimony is required. *See Tabron*, 6 F.3d at 156. Plaintiff alleges he was unlawfully extradited and was the victim of excessive use of force in violation of his Constitutional rights. Plaintiff alleges that Troopers Orlando and McCarthy punched him in the face, causing lacerations, bruises, broken teeth and loss of consciousness. Plaintiff has a partial medical report detailing his injuries and has recently requested dental and psychiatric records. However, an incarcerated layperson with no legal education will not be able to fully and adequately analyze the medical records, so an expert will likely be needed to analyze these documents to assess the extent of Plaintiff's injuries. Since this medical information is

6

important to his excessive force and related claims, Plaintiff has demonstrated that expert testimony will be required to address his claims. Further, there are currently eleven defendants in this action against whom Plaintiff asserted claims of negligence, assault and battery, violations of constitutional, civil, and statutory civil rights, conspiracy to violate said rights, and state law claims of intentional infliction of emotional distress. Specifically, Plaintiff alleges that Defendants failed to protect him from harm in violation of the 8th Amendment in additional to his claim of excessive force. He also claims that he was denied a pre-transfer hearing in violation of the Interstate Agreement on Detainers procedures. The complexity of Plaintiff's claims is without doubt.

The facts in this case are sufficiently complex that Plaintiff will not be able to complete sufficient factual investigation without the assistance of counsel. As Plaintiff is currently incarcerated, counsel will be needed to obtain the necessary medical evidence and coordinate with Plaintiff's medical expert. Counsel will also be needed to investigate the other allegations included in Plaintiff's complaint. Furthermore, Plaintiff has recently indicated that due to his incarcerated status, he has not received pleadings and/or briefs filed by the defendants in a timely fashion, potentially impeding his ability to respond to same.

Finally, the ability of the plaintiff to obtain and afford counsel on his own behalf is a factor to be considered by the Court. Plaintiff asserts that his financial status "has not improved" and that he is in debt to the prison for legal copies. Plaintiff was granted *in forma pauperis* status on February 25, 2009 and has submitted a trust account showing he had an outstanding balance on his trust account with the Northern State Prison as of June 19, 2008. Plaintiff's current financial limitations can seriously inhibit his ability to adequately pursue his claims.

Accordingly, based on a review of Plaintiff's complaint and application(s) for *pro bono* counsel, this Court finds that appointment of *pro bono* counsel is appropriate.

## IV. CONCLUSION

For the reasons stated, it is the finding of this Court that Plaintiff's application for appointment of *pro bono* counsel is granted. An appropriate Order accompanies this Opinion.

_____
JOSEPH A. DICKSON, U.S.M.J.

cc: Hon. Dennis M. Cavanaugh, U.S.D.J.