<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RICKY MILLER,** | |
| **Plaintiff,** | Civil Action No. 08-3335 (DMC)(JAD) |
| **v.** | <u>OPINION AND ORDER</u> |
| **GEORGE HAYMAN, et al.,** | |
| **Defendants.** | |

<u>JOSEPH A. DICKSON, U.S.M.J.</u>

This matter comes before the Court on the fourth application of plaintiff Ricky Miller ("Plaintiff") for the appointment of pro bono counsel (ECF No. 235) (the "Fourth Application"). Pursuant to Federal Rule of Civil Procedure 78, no oral argument was heard. After carefully considering the submissions, and based upon the following, Plaintiff's Fourth Application is **granted**.

### I.    <u>BACKGROUND.</u>[1]

This matter involves a *pro se* litigant's fourth application for appointment of pro bono counsel. This Court previously appointed pro bono counsel to Plaintiff in an Opinion dated February 3, 2011. (ECF No. 130). The facts underlying Plaintiff's previous requests for pro bono counsel are largely identical to those asserted in this renewed application.

Ricky Miller ("Plaintiff") is in custody of the New Jersey Department of Corrections ("NJDOC") at Northern State Prison ("NSP") serving a 20-year sentence for robbery and related offenses, imposed in Warren County, New Jersey, Superior Court. Plaintiff was initially arrested

---

[1] For purposes of this motion, the Court adopts the recitation of facts set forth in Judge Cavanaugh's November 17, 2010 Opinion denying Plaintiff's motion for preliminary injunction. (ECF No. 110).

on those charges by Warren County authorities on November 24, 2004. Plaintiff was living in East Stroudsburg, Pennsylvania and working in New Jersey at the time of his arrest. Plaintiff was incarcerated at the Warren County Correctional Center from the date of his arrest until shortly after his sentencing in April 2006, at which time he entered NJDOC custody.

In June 2005, while Plaintiff was incarcerated at the Warren County Correctional Center awaiting trial, he learned that Monroe County, Pennsylvania had also lodged robbery charges against him and a detainer, which was sent to the jail. In February 2006, Pike County, Pennsylvania also lodged charges and a detainer against Plaintiff, which was sent to the Warren County Correctional Center.

Shortly after Plaintiff was transferred to NJDOC custody in April 2006, Plaintiff informed NJDOC authorities that he wanted the Monroe County, Pennsylvania charges to be resolved. On or about May 12, 2006, Defendant Catherine Lewis, a NJDOC employee, presented Plaintiff with an Interstate Agreement on Detainers ("IAD") Form I, Request for Disposition. Form I allows an inmate to request final disposition of untried charges pursuant to Article III of the IAD, and expressly states that such request is deemed a waiver of extradition. Plaintiff signed Form I requesting final disposition of the untried charges against him and returned it to Defendant Lewis. At the time Plaintiff signed the IAD Form I it was not complete and did not identify the jurisdiction of the pending charges. Plaintiff admitted he was aware that by signing the IAD Form I he was requesting disposition of the open charges and thereby waiving extradition. NSP staff apparently did not immediately send out the forms. On August 8, 2006, Defendant Lewis faxed Plaintiff's IAD forms to the Pike County District Attorney's Office.

2

Also in August 2006, Plaintiff first became aware of the Pike County charges when he was approached by an NJDOC official who asked him to sign IAD forms requesting disposition of the Pike County, Pennsylvania charges, and thereby waiving extradition. Plaintiff believed that the IAD form he signed in May should also apply to the Pike County, Pennsylvania charges and he "did not want to start the procedure over again." (Def.'s Mot. Summ. J. Ex.1 at 30-31, Apr. 19, 2010, ECF No. 85). Therefore, Plaintiff indicated that he did not wish to have his Pike County, Pennsylvania charges resolved, and returned Form I to the NJDOC staff member. On August 11, 2006, the Pike County District Attorney's Office sent a completed Form V, which is a prosecutor's request for temporary custody pursuant to Article IV of the IAD, to NSP for Plaintiff.

In early November 2006, the Pike County District Attorney's Office then sent IAD Form VI, which designates the officers who will transport an inmate under the IAD, and a copy of the Form V, which had been sent to NSP in August, to the IAD Coordinator for the Pennsylvania Department of Corrections. The IAD Form VI designated Pennsylvania State Troopers Orlando and McCarthy to transport Plaintiff, and they arrived at NSP to transport Plaintiff to Pike County on December 4, 2006. When the Troopers attempted to handcuff Plaintiff to transport him to his vehicle, Plaintiff alleges he lost his balance and fell onto a bench, and further alleges that the Troopers punched him in the face, he lost consciousness, and upon regaining consciousness was taken to the prison infirmary and treated for a cut. The Troopers subsequently transported Plaintiff to Pike County. No hearing regarding the transfer took place prior to Plaintiff's transfer on December 4, 2006. Upon arrival in Pike County, Plaintiff appeared before a Magistrate and was then taken to the Pike County Correctional Facility.

3

While in Pike County, Plaintiff filed an application for Writ of Habeas Corpus in the Pike County Court of Common Pleas, through which he challenged the procedures used to effectuate his transfer. Specifically, Plaintiff argued that his waiver of extradition was no longer valid and his detention in Pennsylvania was illegal. In denying Plaintiff's Writ of Habeas Corpus, the Pennsylvania Court determined that Plaintiff's transfer from NSP to Pennsylvania was pursuant to Article III of the IAD, and, pursuant to Article III(e) of IAD, by requesting final disposition of the charges Plaintiff had waived extradition. (Def.'s Mot. Summ. J. Ex.3 at 4-6, Apr. 19, 2010, ECF No. 85).

On or about July 3, 2008, Plaintiff filed the underlying civil suit in this case alleging violations of his constitutional rights under 42 U.S.C. §§ 1983, 1985 and claims under New Jersey state law. On or about February 2, 2009, Plaintiff filed an application for pro bono counsel which was denied without prejudice. On or about August 2, 2010, Plaintiff submitted his third application for pro bono counsel. In his third application, Plaintiff cited not only the complexity of the issues but also his indigent and incarcerated status. He further has submitted to the Court multiple letters from attorneys/legal centers that he contacted informing him that they cannot take on his case. Based on a review of Plaintiff's complaint and applications for pro bono counsel, this Court found that the appointment of pro bono counsel was appropriate, ( ECF No. 130), and appointed Jennifer Critchley, Esq. ("Attorney Critchley").

By Order dated January 29, 2013, however, this Court granted Attorney Critchley's *ex parte* application for relief from appointment as pro bono counsel for Plaintiff, finding that "Plaintiff has demonstrated a continued effort to pursue this action on his own behalf and without the assistance of the pro bono counsel appointed by this Court." (ECF No. 215). (Plaintiff filed a motion for reconsideration of this Court's November 30, 2012 Opinion and

4

Order, (ECF No. 194), without authorization from Attorney Critchley. (ECF No. 205, 206). Plaintiff also filed a notice of appeal without authorization from Attorney Crtichley. (ECF No. 207)). This Court further denied Plaintiff's request to appoint alternate pro bono counsel. (ECF No. 215). At this time, there are currently four defendants in this action and Plaintiff's remaining claims include violations of his constitutional rights under 42 U.S.C. § 1983.

## II.   LEGAL STANDARD.

Civil litigants possess neither a constitutional nor statutory right to appointed counsel. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). However, in some instances the need for representation is great and district courts are granted broad discretion to request the appointment of attorneys to represent indigent civil litigants. 28 U.S.C. § 1915 (d), (e)(1). The Third Circuit has directed that district courts should first determine whether a plaintiff's claim "has arguable merit in fact and law." Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993), cert denied, 510 U.S. 1996 (1994). Assuming plaintiff's claims have merit, the Third Circuit promulgated a number of factors to be considered by district courts in the exercise of their discretion under § 1915(e)(1). These factors include: (1) the plaintiff's ability to present his case; (2) the complexity of the legal issues; (3) the extent of factual discovery and the plaintiff's ability to investigate and to comply with complex discovery rules; (4) the extent to which the case may turn on credibility determinations; (5) whether expert testimony will be required; and (6) whether the plaintiff can afford counsel on his own behalf. Id. at 156.

The Third Circuit further emphasized that the "volunteer lawyer[s'] time is extremely valuable" and for that reason, "district courts should not request counsel under § 1915[(e)] indiscriminately." Id. at 157. Finally, the court must take note of "the significant practical restraints on the district courts' ability to appoint counsel; the ever-growing number of prisoner

civil rights actions filed each year in the federal court; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation" without pay. Id.

## III.   DISCUSSION.

In analyzing the merits of Plaintiff's Complaint, the Court is cognizant that a *pro se* plaintiff's complaint is held to a less stringent standard than pleadings filed by an attorney. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Moreover, the Court recognizes that civil rights allegations are not meritless unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. Id.

In the present case, Plaintiff alleges that Defendants unlawfully took him into custody to extradite him to Pennsylvania and beat him, causing him injuries. Specifically, Plaintiff alleges that during his transfer from Northern State Prison, Defendants maliciously assaulted him without provocation by twisting his wrist behind his back, causing plaintiff to fall, and then punching him in the face repeatedly to the point Plaintiff lost consciousness. While Plaintiff's claims will require evidentiary support, Plaintiff has established that his claims have sufficient merit to allow the Court to proceed to the second stage of the Tabron analysis. Tabron, 6 F.3d at 156.

The Court must then look to the ability of Plaintiff to present his case in determining whether to appoint counsel. Tabron, 6 F.3d at 156. Plaintiff claims in his applications for pro bono counsel that his limited comprehension of discovery rules, along with his confinement, will impede his ability to pursue his claims. Although Plaintiff has litigated his claims and has demonstrated he has a basic understanding of his claims and the relevant law, Plaintiff claims that he has received some assistance in preparing previous submissions, but he no longer has

such help.  The Court is convinced that Plaintiff lacks the ability to present his case without an attorney, especially considering the need for medical expert testimony for Plaintiff's excessive force claims.

Next, the Court must consider the complexity of the particular issues involved and the degree to which factual investigation and/or expert testimony is required.  See Tabron, 6 F.3d at 156.  Plaintiff alleges he was the victim of excessive use of force in violation of his Constitutional rights.  Plaintiff alleges that Troopers Orlando and McCarthy punched him in the face, causing lacerations, bruises, broken teeth and loss of consciousness.  Plaintiff has a partial medical report detailing his injuries and has requested dental and psychiatric records.  However, an incarcerated layperson with no legal education will not be able to fully and adequately analyze the medical records, so an expert will likely be needed to analyze these documents to assess the extent of Plaintiff's injuries.  Since this medical information is important to his excessive force claims, Plaintiff has demonstrated that expert testimony will be required to address his claims.

Finally, the ability of the plaintiff to obtain and afford counsel on his own behalf is a factor to be considered by the Court.  Plaintiff was granted in forma pauperis status and has submitted a trust account showing he had an outstanding balance on his trust account with the Northern State Prison as of July 16, 2013.  (ECF No. 235).  Plaintiff's financial limitations can seriously inhibit his ability to adequately pursue his claims.  Moreover, Plaintiff asserts that he recently attempted to obtain legal representation from two law firms; however, his requests for representation were declined.

A factor not specifically listed by Tabron, but certainly important to the analysis here, is that Plaintiff already had counsel appointed.  During that appointment, Plaintiff's conduct caused

7

great confusion to his own attorneys, the other parties, and this Court and ultimately forced the withdrawal of his attorneys. Specifically, Plaintiff filed documents on his own behalf rather than through his appointed counsel. Once this Court appoints pro bono counsel, Plaintiff is prohibited from communicating with this Court or opposing counsel expect through his appointed counsel. If Plaintiff violates this prohibition and continues to pursue this action on his own behalf, this Court will relieve pro bono counsel of any representation of Plaintiff.

### IV.   CONCLUSION.

For the foregoing reasons, Plaintiff's Fourth Application for the appointment of pro bono counsel, (ECF No. 235), is **granted.**

SO ORDERED

_____

JOSEPH A. DICKSON, U.S.M.J.

cc:   Hon. Dennis M. Cavanaugh, U.S.D.J.