**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| RICKY MILLER, | : | |
| | : | |
| | : | **Civil Action No. 08-3335 (SRC)** |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| NEW JERSEY DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court upon three in limine motions: (1) Defendants' motion to preclude the testimony of Plaintiff's expert witness Dr. James McMenamin [ECF 316]; (2) Defendants' motion to preclude Plaintiff from litigating the legality of his interstate transfer [ECF 317]; and (3) Plaintiff's motion to preclude Defendants from introducing evidence of Plaintiff's criminal convictions and Plaintiff's disciplinary history while incarcerated [ECF 318]. Opposition to each of the motions has been filed. The Court proceeds to rule on the motions based on the papers submitted, and without oral argument, pursuant to Federal Rule of Civil Procedure 78.

As the background of this case is well-known to the parties and has been set forth at length in the Court's previous opinions, the Court will provide only a brief summary of the facts. This § 1983 action arises from an incident on December 4, 2006. On that date, Defendants Frank Orlando and Edward McCarthy, both troopers with the Pennsylvania State Police, came to the Northern State Prison in Newark, New Jersey, where Plaintiff Ricky Miller was then

incarcerated, for the purpose of transporting Mr. Miller to Pennsylvania to face criminal charges

pending against him in that state. Plaintiff objected to the transfer. Plaintiff maintains that when

he questioned the validity of his transfer and asked to see documentation authorizing the transfer,

Defendants refused to provide him with any paperwork or warrants and forced him to comply.

Defendants claim that Plaintiff resisted their attempts to take him into their custody. It is

undisputed that when Troopers Orlando and McCarthy attempted to handcuff Mr. Miller,

Trooper Orlando punched Plaintiff in the face. Plaintiff was treated in the Northern State Prison

infirmary and thereafter transported by Defendants to Pennsylvania.

Plaintiff claims that the force used by Defendants was unconstitutionally excessive in

violation of the Eighth Amendment. The instant lawsuit alleges that the Defendants' excessive

force caused Plaintiff to sustain dental injuries and resulted in the extraction of several teeth

subsequent to the incident. While the original Complaint asserted a number of causes of action,

the sole claim proceeding to trial is an Eighth Amendment claim against Troopers Orlando and

McCarthy.

A jury trial of this action is scheduled to commence on September 5, 2018. In

anticipation of several issues that will arise at trial, the parties have filed three motions in limine,

which are the subject of the instant Opinion. The Court will address each in limine motion in

turn.

I.      MOTION TO PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERT DR. MCMENAMIN

Plaintiff has proffered the expert opinion of a dentist, Dr. James P. McMenamin, in

support of his claim that Defendants' conduct caused him to sustain dental injuries. In the

expert's February 6, 2017 report, Dr. McMenamin states that he performed an oral and

maxillofacial examination on Mr. Miller on September 27, 2016. He notes that, at the time of the examination, Mr. Miller had a full maxillary denture and partial mandibular denture. Dr. McMenamin's report also states that he reviewed Plaintiff's applicable medical records. Dr. McMenamin opines that "it is apparent from the records that the altercation of December 4, 2006 caused [Mr. Miller] significant dental trauma" and "conclude[s] to a reasonable degree of Medical/Dental certainty that the trauma Mr. Miller sustained on December 4, 2006 when he was punched several times by State Troopers set in motion the subsequent loss of Mr. Miller's remaining maxillary teeth and all but 7 of his mandibular teeth." (Mot. Ex. 1, ECF 316-2.)

Defendants challenge the admissibility of Dr. McMenamin's testimony as unreliable. They argue that in his perfunctory, page-and-a-half long report, Dr. McMenamin provides no reliable methodology for having reached the conclusion that Plaintiff's significant dental problems and many tooth extractions were caused by Trooper Orlando having struck Mr. Miller in the face. They point out that at his deposition, Dr. McMenamin conceded that his clinical exam of Mr. Miller, conducted almost ten years after the incident, did not allow him to form a conclusion as to what caused the damage to Mr. Miller's teeth, resulting in his many extractions. (McMenamin Dep. 20:7-11.) They further point out that Dr. McMenamin also conceded that tooth extractions have a number of different possible causes—decay, periodontal disease, trauma, and infection—and that the medical records gave him no indication as to the reason Mr. Miller's teeth had been extracted. (Id. at 21:22-22:1, 24:3-11, 35:10-20.) Indeed, they note that Dr. McMenamin acknowledged that, as of October 2006, just prior to the incident, Plaintiff was already planning on having three teeth extracted. (Id. at 25:5-14.) Thus, Defendants maintain, Dr. McMenamin has no grounds for concluding that the many tooth extractions Mr. Miller

3

underwent in the years following the December 4, 2006 incident were caused by trauma

sustained by Plaintiff when he was struck by Trooper Orlando. Defendants submit that Dr.

McMenamin's opinion amounts to no more than speculation, unsupported by a reliable

methodology, and must therefore be excluded.

The Court agrees. The Court bears an obligation to act as a gatekeeper and ensure that

expert testimony is both relevant and reliable.  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S.

137 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). Federal Rule of

Evidence 702 sets the standard for admissibility of expert testimony.  It provides:

> If scientific, technical, or other specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion or otherwise, if (1)
> the testimony is based upon sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the witness has applied
> the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In its Daubert opinion, the Supreme Court articulated various factors that a district court

may use to analyze the reliability of expert testimony.  That non-exhaustive list of factors is as

follows: (1) whether the particular theory can be and has been tested; (2) whether the theory has

been subjected to peer review and publication; (3) the known or potential rate of error; (4) the

existence and maintenance of standards controlling the technique's operation; and (5) whether

the technique has achieved general acceptance in the relevant scientific or expert community.

Daubert, 509 U.S. at 593-94.  Later, in Kumho Tire, the Supreme Court clarified that "the test of

reliability is flexible, and Daubert's list of specific factors neither necessarily nor exclusively

applies to all experts or in every case." Kumho Tire, 526 U.S. at 141. The crux of the inquiry as

to reliability is whether the expert's testimony is based on "good grounds" rather than the "subjective belief or unsupported speculation" of the expert witness. United States v. Williams, 235 Fed. App'x 925, 928 (3d Cir. 2007) (quoting Daubert, 509 U.S. at 590).

In this case, it is apparent that the opinion offered by Dr. McMenamin is not based on good grounds. In his report, he provides two bases for his opinion that the incident of December 4, 2006 caused Mr. Miller's dental injuries: his clinical examination of Mr. Miller conducted nearly ten years after the incident and his review of the medical records. The report, however, does not explain how Dr. McMenamin used the information he gathered to form his opinion. Nor does it explain how the records and exam support his conclusion. When given an opportunity to draw a connection between his opinion and its two purported bases, Dr. McMenamin conceded in his deposition testimony that neither the records nor the examination conclusively demonstrated that Mr. Miller's injuries were caused by trauma sustained as a result of Trooper Orlando's striking Mr. Miller in the face. Indeed, it appears Dr. McMenamin's sole basis for his opinion is Mr. Miller's own account of the December 4, 2006 incident, in which Mr. Miller informed Dr. McMenamin that after the incident, he was bleeding from his mouth and felt his teeth were loose. (McMenamin Dep. 36:9-20.)

Plaintiff's expert has provided no methodology for his conclusions. His opinion is therefore unreliable and inadmissible under Federal Rule of Evidence 702. Accordingly, the Court will grant Defendant's motion to preclude the testimony of Plaintiff's expert witness, Dr. McMenamin.

**II.** **DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM RE-LITIGATING HIS INTERSTATE TRANSFER**

Defendants anticipate that Plaintiff will present evidence at trial that challenges the legality of his transfer from New Jersey to Pennsylvania pursuant to the Interstate Agreement on Detainers ("IAD") on December 4, 2006. They seek to bar that evidence under Federal Rules of Evidence 402 and 403. Defendants argue that evidence that the transfer was improper or invalid is not relevant to Plaintiff's excessive force claims, and, moreover, would only serve to confuse the jurors as to the critical issue of whether the Defendant officers' use of force to subdue the non-compliant Plaintiff. Moreover, they also argue that the question of whether the transfer was valid pursuant to the IAD has been decided by a Pennsylvania state court, which rejected Plaintiff's challenge, as noted by this Court in its December 20, 2010 Opinion. (See ECF 117.) Defendants further point out that this Court has already held that the decision of the Pennsylvania court regarding the validity of Plaintiff's transfer pursuant to Article III of the IAD is binding pursuant to the Full Faith and Credit Clause of the Constitution and that Plaintiff is barred under the doctrine of res judicata from relitigating the issue of whether the transfer was proper under the IAD. (Id.) Defendants submit that they have no objection to Plaintiff's mention of the IAD transfer and evidence of his belief that the transfer was not authorized, so long as they may also introduce the fact that the transfer was ruled to be lawful under the IAD.

Plaintiff counters that the evidence is relevant should be admitted. He states that he does not wish to re-litigate the legality of the transfer but argues that that to understand the totality of the circumstances concerning whether Defendants' use of force was reasonable, jurors must consider evidence relating to the IAD transfer process itself, alternatives to that process, and the

reasons for Plaintiff's resistance to the transfer. He maintains that evidence concerning the IAD transfer process and the circumstances surrounding Plaintiff's resistance to the transfer goes to the core of the excessive force claim. Mr. Miller contends that the jury needs this information to understand why he demanded that Troopers Orlando and McCarthy produce paperwork authorizing the transport and why he did not comply with their attempts to take him into custody when they failed to produce the documentation.

The Court holds that Defendants' motion to preclude evidence relating to the IAD transfer is granted in part and denied in part. Plaintiff may not introduce evidence challenging the validity of the transfer. As Defendants note, that issue has been settled and cannot be re-litigated. Moreover, the validity of the transfer under the IAD is not relevant to an evaluation of whether Defendants' use of force to take Plaintiff into custody was "applied in a good faith effort to maintain or restore discipline," the central question in an excessive force claim. Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000). However, Plaintiff may present testimony setting forth his belief that the transfer was improper, the basis for that belief, and the facts and circumstances surrounding his resistance to comply with the transfer, i.e., his demand to see authorizing documents and Defendants' response to those demands. On an excessive force claim, the jury must consider the overall "facts and circumstances leading up to the time" that force was used and relates to the reasonableness of the force applied. See Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004). Evidence that Plaintiff questioned the legal authority for his transfer and evidence regarding how Defendants handled his objections to the transfer fall within the overall facts of the incident at issue.

**III. MOTION TO PRECLUDE INTRODUCTION OF PLAINTIFF'S CRIMINAL CONVICTIONS AND PRISON DISCIPLINARY HISTORY**

Plaintiff anticipates that Defendants will seek to introduce evidence at trial related to Plaintiff's past criminal convictions and to his disciplinary history while incarcerated. While he has offered to stipulate to the fact that he was incarcerated at the time of the events underlying this suit, Plaintiff raises various grounds for the exclusion of any evidence of past crimes or misconduct. First, Plaintiff maintains that any reference to his criminal convictions would be irrelevant to his claims in this lawsuit and, even if deemed relevant, unduly prejudicial under Federal Rule of Evidence 403. Second, invoking Rule 404's prohibition on prior bad acts evidence, Plaintiff argues that introducing bad acts evidence would be an inappropriate effort by Defendants to demonstrate that Plaintiff had a propensity to act in accordance with the character trait displayed in the prior act. Third, Plaintiff argues that his criminal convictions cannot be used to impeach his testimony at trial under Rule 609 because his prior convictions did not involve a dishonest act or false statement.

In opposition, Defendants clarify that the scope of evidence related to Plaintiff's past crimes and wrongs that they seek to introduce at trial is limited to "only evidence of past conduct of which Troopers Orlando [and McCarthy] were personally aware – the Robbery and Theft charges [Mr. Miller] was being returned to Pennsylvania for and the fact that he had recently been convicted of Aggravated Assault and Robbery in New Jersey." (Mot. at 3, ECF 319.) Evidence of what the Defendant officers knew about Plaintiff at the time of the encounter on December 4, 2006 is, Defendants maintain, admissible as a permissible use of bad acts evidence, under Rule 404(b). Troopers Orlando and McCarthy contend that such evidence of their

knowledge is very relevant to the claims of excessive force, insofar as it is probative of their assessment of the threat of violence posed by Mr. Miller. Defendants argue that evidence of the officers' awareness that Mr. Miller had, at the time of the incident underlying this lawsuit, been recently convicted of a violent crime and was facing charges for additional violent acts is, indeed, critical to a determination of the appropriate use of force.

The Court finds that insofar as evidence of Plaintiff's past convictions, prison disciplinary history, and criminal charges relates to Defendants' knowledge or awareness of these prior acts at the time of the December 4, 2006 incident, the evidence is admissible under Rule 404. Rule 404(b) generally bars admission of evidence of a person's crime, wrong, or other act in order to show that on a particular occasion the person acted in accordance with that character. Fed. R. Evid. 404(b). The rule does, however, list certain permissible uses for such evidence: "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). For Rule 404(b) "other acts" evidence to be admissible under any of the exceptions recognized by the rule as permissible uses, the following requirements must be met: "(1) the evidence must have a proper purpose; (2) it must be relevant under Rule 401 and 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it was admitted." Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 520 (3d Cir. 2003); see also Huddleston v. United States, 485 U.S. 681, 691 (1988) (setting forth four-part evaluation for determining admissibility of other acts evidence under Rule 404(b)).

All of the requirements are met in this case to introduce the evidence under the

knowledge exception to Rule 404(b). First, the evidence would be offered for proper purpose,

"i.e., a purpose other than showing that an individual has a propensity or disposition for certain

activity." Id. (citing Gov't of Virgin Islands v. Pinney, 967 F.2d 912, 914 (3d Cir. 1992); see also

United States v. Green, 617 F.3d 233, 250 (3d Cir. 2010) ("A proper purpose is one that is

probative of a material issue other than character."). In this case, the limited introduction of Mr.

Miller's prior acts would serve to demonstrate Defendants' knowledge of those acts when they

used force in the process of transferring Mr. Miller from the New Jersey to Pennsylvania. This

evidence is probative of a material issue in this excessive force case, as it provides insight into

the Defendant officers' handling of the situation they faced when Mr. Miller admittedly resisted

being taken into custody and their assessment of the threat posed by Mr. Miller. Second, the

Defendants' knowledge of Mr. Miller's prior misconduct and crimes, which included acts of

violence, is relevant to the reasonableness of the amount of force Defendants employed to handle

the situation, which must be evaluated from the perspective of the officer at the time of the

incident. Graham v. Connor, 490 U.S. 386, 396 (1989). Third, the probative value of the

evidence substantially outweighs its prejudicial effect under Rule 403. Rule 403 allows a court to

"exclude relevant evidence if its probative value is substantially outweighed by a danger of one

or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As set

forth above, the evidence of Defendants' knowledge is critical to a determination of the

reasonableness of their use of force. It bears on their perception of the danger they encountered

and their on-the-spot judgments about how much force needed to be used. Fourth, as Defendants

have stated, the evidence of Mr. Miller's prior acts would be would be limited to demonstrating

Defendants' knowledge of those acts at the time they were engaged in the process of transferring

Mr. Miller from the New Jersey to Pennsylvania. The Court will instruct the jury to consider the

evidence only for that limited purpose for which it was admitted.

Plaintiff's motion to preclude Defendants from using his criminal convictions also

invokes Rule 609, which governs the use of convictions to attack a witness's character for

truthfulness. Rule 609(a)(1) permits the use of a felony conviction to impeach a witness, subject

to Rule 403's balancing test, and Rule 609(a)(2) permits impeachment by evidence of any crime

involving a dishonest act or false statement. Fed. R. Evid 609(a). In addition, the rule places a

time limit on convictions which may be used, specifying that "if more than 10 years have passed

since the witness's conviction or release from confinement for it, whichever is later," the

evidence is generally not admissible unless its probative value substantially outweighs its

prejudicial effect and the proponent of the evidence gives the adverse party written notice of the

intent to use it. Fed. R. Evid 609(b). Plaintiff argues that his criminal convictions may not be

used for impeachment purposes under Rule 609(b) because the elements of the crimes did not

require proving a dishonest act or false statement.

Defendants have not addressed Plaintiff's Rule 609 arguments their responsive brief. It

would thus appear that Defendants are not opposing this aspect of Plaintiff's motion in limine.

Nevertheless, the Court will reserve ruling on Plaintiff's motion to preclude evidence

under Rule 609. Based on the submissions before the Court, it is not clear to the Court that

Defendants intend to use evidence of the criminal convictions to impeach Plaintiff's testimony at

trial. Additionally, the Court lacks sufficient information to assess the admissibility of the

11

evidence (e.g., probative value versus prejudicial effect and/or whether the conviction in question is barred by the rule's time limit). In the event Defendants wish to use evidence of Plaintiff's criminal convictions to attack the credibility of Plaintiff's testimony, they must first proffer such evidence to the Court at the time of trial and permit Plaintiff an opportunity to renew his Rule 609 motion to preclude the evidence. Additionally, the Court wishes to note that it voices no opinion on whether Defendants may propound questions pursuant to Federal Rule of Evidence 608(b).

## IV.   CONCLUSION

For the foregoing reasons, the Court rules on the pending motions in limine as follows: (1) the motion to preclude the expert testimony of Dr. McMenamin will be granted; (2) the motion to preclude Plaintiff from introducing evidence regarding his interstate transfer will be granted in part and denied in part; and (3) the motion to preclude Defendants from introducing evidence relating to Plaintiff's criminal convictions and prison disciplinary history will be granted in part, denied in part and reserved in part.

An appropriate Order will be filed.

   s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated:  July 25, 2018